Argued and submitted January 20, affirmed March 22, 1995

Richard J. MURRAY,
*Petitioner,*

*v.*

COLUMBIA RIVER GORGE COMMISSION,
*Respondent.*

. (CA A83306)

891 P2d 1380

G. Joseph Gorciak, III, argued the cause and filed the brief for petitioner.

Lawrence Watters argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and John T. Bagg, Assistant Attorney General.

Kristen C. Chapin filed the brief *amici curiae* for Association of Oregon Archaeologists, Historic Preservation League of Oregon and David Ellis, professional archaeologist.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Haselton, Judge.

DEITS, P. J.

## DEITS, P. J.

Petitioner seeks review of the Columbia River Gorge Commission's order, holding that he willfully violated the Columbia River Gorge National Scenic Area Act (P.L. 99-663; 16 USC § 544) (Act), by conducting a major development action involving the removal of aggregate and other resources on property in Wasco County, Oregon, without obtaining Commission approval. *See* P.L. 99-663, section 10(c) (16 USC § 544h(c)). We affirm.

Petitioner makes a number of arguments, only one of which warrants discussion. In general terms, the Act creates three categories of land within the area, with descending levels of protection: special management areas (SMAs), general management areas (GMAs)[1] and urban areas. *See* Blair, *The Columbia River Gorge National Scenic Act: The Act, Its Genesis and Legislative History*, 17 Envir L. 863, 934-36 (1987). Petitioner contends that the Commission erred by finding a willful violation of the Act, or any violation at all, because his property is in a GMA and, he maintains, the Act makes an activity of the kind that he conducted a "major development action" only in SMAs.

P.L. 99-663, section 2(j) (16 USC § 544(j)) provides:

" 'major development actions' means any of the following:

"(1)   subdivisions, partitions and short plat proposals;

"(2)   any permit for siting or construction outside urban areas of multifamily residential, industrial or commercial facilities, except such facilities as are included in the recreation assessment;

"(3)   the exploration, development and production of mineral resources unless such exploration, development or production can be conducted *without disturbing the surface of any land within the boundaries of a special management area* or is for sand, gravel and crushed rock used for the construction, maintenance or reconstruction of roads within the special management areas used for the production of forest products; and

---

[1] The term "General Management Area" is not used in the Act. However, the term is commonly used to describe all land not included in an "Urban Area" or "Special Management Area" under the Act.

"(4)  permits for siting or construction within a special management area of any residence or other related major structure of any parcel of land less than forty acres in size * * *." (Emphasis supplied.)

Petitioner relies on the emphasized language, and asserts that the Act does not "provide the Commission with oversight of such activities outside" SMAs. The Commission reached the opposite conclusion. Its order states, as material:

"The definition of 'major development actions,' 16 USC § 544(j), including the reference to 'the exploration, development and production of mineral resources,' 16 USC § 544(j)(3), applies to the entire Columbia River Gorge National Scenic Area.

"The exception to that definition, which provides that the exploration, development and production of mineral resources is not a major development action if it 'can be conducted without disturbing the surface of any land within the boundaries of a special management area,' *id.*, excepts from the definition of 'major development actions' only those mining and related activities *within* a special management area (SMA) that will not disturb the surface of the land within such area.

"The interpretation proposed by Richard Murray through his counsel that the exception applies to any and all such activities throughout the entire Scenic Area as long as those activities do not disturb the surface of the land within a SMA is inconsistent with the purposes of the Act and would remove Commission oversight of such activities outside the SMAs. Taken to the extreme, this proposed interpretation would allow strip mining throughout the General Management Area without Commission oversight or approval as long as the activity did not encroach upon or affect the surface of the land within a SMA.

"* * * * *

"The removal of aggregate and other resource materials from the subject property on June 25, 1993, constitutes 'the exploration, development and production of mineral resources' under the Act and therefore is a 'major development action' under the Act." (Emphasis in original.)

The Commission's interpretation finds support in section 10(c) of the Act, which provides:

> "(c)  REVIEW OF DEVELOPMENT ACTION. — Prior to the effective date of a land use ordinance for each county pursuant to section 7 of this Act, and concurrence of the Secretary on a land use ordinance for each county pursuant to section 8 of this Act, *the Commission shall review all proposals for major development actions and new residential development in such county in the scenic area, except urban areas*. The Commission shall allow major development actions and new residential development only if it determines that such development is consistent with the standards contained in section 6 and the purposes of this Act." (Emphasis supplied.)[2]

The above section provides context for the definition in section 2(j)(3), on which petitioner relies. It indicates that major development actions can occur and be subject to Commission review in all land classifications in the scenic area except urban areas; in other words, such actions are generally subject to Commission regulation in GMAs as well as SMAs.

Also relevant is section 6(d) of the Act, (16 USC § 544d), which provides, as relevant:

> "STANDARDS FOR THE MANAGEMENT PLAN. — The management plan and all land use ordinances and interim guidelines adopted pursuant to this Act shall include provisions to —
>
> "* * * * *
>
> "(5) *prohibit major development actions in special management areas*, except for partitions or short plats which the Secretary determines are desirable to facilitate land acquisitions pursuant to this Act;
>
> "* * * * *
>
> "(9) *require that the exploration, development and production of mineral resources*, and the reclamation of lands thereafter, take place without adversely affecting the scenic, cultural, recreation and natural resources of the *scenic area*." (Emphasis supplied.)

---

[2] The events in question here predated the effective date of any applicable land use ordinance in Wasco County, and the Commission had jurisdiction under this section. *See Tucker v. Columbia River Gorge Com'n*, 73 Wash App 74, 867 P2d 686 (1994).

The Commission's Final Interim Guidelines establish review and approval requirements for uses throughout the entire scenic area except urban areas, Chapter II, and specifically regulate and require applications for mineral resource uses in GMAs. Chapter III.C.9.b.

Reading sections 2(j) and 6(d)(5) together, the import is that exploration, development or production of mineral resources is a major development action that must be prohibited in SMAs, unless the activity can be conducted without disturbing the surface of land in an SMA. In that context, the language of section 2(j) on which petitioner depends is not a *limitation on regulation outside SMAs*; it is an *exception from a prohibition within SMAs*, which in no way implies that the use may not be regulated in *any* way or is not a major development action if it occurs in a GMA.

That distinction that petitioner misses becomes more graphic when subsections 6(d)(5) and (9) are considered together. The former requires major development actions, including those involving mineral resources, to be prohibited *in SMAs*; the latter specifically requires the Commission to regulate activities involving mineral resources *throughout the scenic area*. As noted above, the Guidelines implement that requirement, *inter alia*, through an application process that is specifically applicable in GMAs.

In sum, the Act and the Guidelines provide for regulation outside SMAs, as well as prohibition within them. The regulation under the Guidelines includes an application and approval requirement for mineral resource operations in GMAs, and that requirement is consistent with the Commission's authority and responsibility under section 6(d)(9) of the Act. The issue is whether petitioner willfully violated the Act by conducting his operations without the requisite approval, and he provides no basis for disturbing the Commission's conclusion that he did.

Affirmed.