[No. 28049-0-I.   Division One.   May 3, 1993.]

CRAIG VAN SANT, ET AL, *Respondents,* v. THE CITY OF EVERETT, *Appellant.*

642

*Bruce E. Jones, City Attorney,* and *Walter C. Sellers, Assistant,* for appellant.

*Bradford N. Cattle* and *Law Office of Anderson Hunter,* for respondents.

KENNEDY, J. — The City of Everett appeals the Superior Court's reversal and remand of an Everett hearing examiner's decision. We affirm in part and reverse in part.

## FACTS

Respondent Craig Van Sant filed an application for a nonconforming use permit for property located at 4228 South Third in Everett. Such permits are governed by provisions of former Everett Municipal Code chapter 19.56. Everett's director of planning and community development granted Van Sant a certification of nonconforming commercial and multifamily use on October 26, 1989, allowing automobile detailing on the main floor and three multifamily units on the second floor of Van Sant's property. Neighbors Carolyn Lively, Terry Slattern, Mark Sullivan and Joanne Wildman appealed the decision to the City of Everett hearing examiner.

At the resulting hearing before the examiner, Van Sant presented evidence that in 1972 the City's board of adjustment had acknowledged the commercial nonconforming use right of the property by authorizing a previous owner to

"utilize the vacant non-conforming commercial structure for commercial purposes." A multifamily residential use was not acknowledged or approved by the board of adjustment at that time or any later date.

Van Sant also presented evidence establishing that when the prior owner, Mr. Cole, acquired the property a recycling business was being conducted on the premises. Van Sant contends that when Cole became the owner he used the first floor of the building for operation of a neon glass plant and for storage. Cole also blew glass on the premises as a hobby.

Some neighbors confirmed that Cole used the premises to run a business. One neighbor, Don Fletcher, testified that he saw neon companies pick up products on a daily basis. Van Sant testified that he owned the house across the street from the premises in question for 10 years and he saw glassblowing and manufacturing going on. In contrast, other neighbors claimed that there was little evidence of a business being conducted on the premises.

Marian Paine, an Everett housing inspector, testified that the City posted the building as illegal to occupy for residential purposes in 1974. Paine also testified that Cole was uncooperative in getting permits and bringing the structure up to code and, therefore, no permits had been issued. Mr. Irvine, from city planning, testified that the City had no record of any federal, state, or local tax payments that would indicate that income was being generated on the premises. The City could find no record of a business license ever being issued. Nor were there fire inspection records on file.

Cole testified that the work done on site was for other businesses and the taxes and business licenses were all handled through different companies. He stated that he never conducted a business using his own name or tax identification number and there were no commercial sales out of the site. Any income generated from the location was reported by companies that did not have an ownership interest in the site, and employees were paid by different companies. Cole also stated that there was continuous use of the property for business purposes from 1972 to 1989.

Following the December 19, 1989, hearing, the hearing examiner issued a written decision on January 12, 1990, granting the neighbors' appeal and withdrawing the certification of nonconforming use. The following findings are of particular importance for this appeal:

## FINDINGS OF FACT

. . . .

7. During the time Mr. Cole owned the subject property, no Business License was acquired from the State of Washington or the City of Everett for the use of the property. No registration of the property was made with any of the taxing departments of the State of Washington. The building was used in conjunction with Mr. Cole's business, a neon sign company, that had its main office in Seattle.

8. During the period of time Mr. Cole owned the property, his main place of business was in Seattle. The activity in the building on-site was done during off hours, or when Mr. Cole brought work home from the Seattle plant. Any nonconforming commercial use of the property has terminated because the variance of April 3, 1972, has lapsed, and, the commercial use has not been continuous since that time to the present.

. . . .

11. The historical use of the building on the subject property includes numerous violations of City of Everett's codes. . . .

. . . .

12. No non-conforming use of the property as a multi-family residence has existed for the building and property.

## CONCLUSIONS

. . . .

3. Any non-conforming commercial use of the property that may have existed as a result of a variance that was issued on April 3, 1972, has terminated. The variance has lapsed.

. . . .

6. The non-conforming commercial use of the property has not been continuous, and, therefore, the property is not a commercial non-conforming use.

7. No multi-family residential non-conforming use has been established for the subject property.

## DECISION

The Applicant contended that the previous owner of the property established it as a commercial use. The basis of this contention is that the City, through the Everett Board of Adjustment, on April 3, 1972, established the non-conforming commercial status of the building. According to the Applicant, the previous owner, who purchased the building

on May 12, 1973, continued the non-conforming commercial use until he sold the property to the Applicant, who contends that the commercial use has been continued to the present.

The weakness in the Applicant's argument is the fact that no licensed or taxed commercial activity has occurred on the site. At no time during the previous ownership was there a Business License issued by the City of Everett for the business activity on-site; and, at no time during the previous ownership were Business and Occupation taxes ever paid to the City of Everett for the business conducted on-site.

. . . .
. . . Thus, because no official or documented activity has been transacted on the property, the use cannot be considered non-conforming for commercial use in the R-2 zone.

On January 29, 1990, Van Sant filed a request for reconsideration of the January 12, 1990, decision. At a February 22, 1990, hearing more evidence was presented concerning commercial activity. In a decision dated March 8, 1990, the hearing examiner concluded once again that Van Sant had failed to establish a nonconforming legal use. Significant portions of this decision read:

The activity on the subject property in the past has been in conjunction with other business uses. However, there are no business records, taxation records, or any permits from the City of Everett with regard to the commercial activity on the subject property noted.

A complete review has been made of the Request for Reconsideration. The Applicant has failed to document the legal use of the subject property for commercial activity. As noted in the original Findings and decision of January 12, 1990, there is no specific proof that the activity on-site was a commercial activity that was authorized or licensed by the City of Everett.

Van Sant appealed to the Everett City Council which declined to review the matter de novo and adopted the hearing examiner's decision. Thereafter, Van Sant filed a writ of certiorari before the Superior Court for Snohomish County. The Superior Court heard argument on February 1, 1991, and, finding errors of law, issued its decision overruling certain determinations made by the hearing examiner

and remanding the matter. The City of Everett appeals this remand order.

DISCUSSION

1. Standard of Review

■ In reviewing a superior court's reversal of a hearing examiner's decision, the appellate court conducts its own review of the record before the hearing examiner. *Grader v. Lynnwood*, 45 Wn. App. 876, 879-80, 728 P.2d 1057 (1986). On questions of fact the reviewing court applies the arbitrary and capricious standard. *Abbenhaus v. Yakima*, 89 Wn.2d 855, 858-59, 576 P.2d 888 (1978). On issues of law the court applies the error of law standard. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983); *Fisher v. Employment Sec. Dep't*, 63 Wn. App. 770, 773, 822 P.2d 791 (1992); *Schmitt v. Cape George Sewer Dist. 1*, 61 Wn. App. 1, 4, 809 P.2d 217 (1991). Under the error of law standard the reviewing court may substitute its own judgment. However, substantial weight is generally given the agency's view of the law. *Franklin*, at 325; *Schmitt*, at 4. The error of law standard also applies to mixed questions of fact and law. *Devine v. Department of Empl. Sec.*, 26 Wn. App. 778, 781, 614 P.2d 231 (1980).

■ Proceedings before quasi-judicial administrative bodies, including zoning proceedings, are not governed by strict rules of judicial procedure. *See Mitchell Land Co. v. Planning & Zoning Bd. of Appeals*, 140 Conn. 527, 536, 102 A.2d 316, 321 (1953); *Woodbury v. Zoning Bd. of Review*, 78 R.I. 319, 323, 82 A.2d 164, 166 (1951); *National Heritage, Inc. v. Pritza*, 728 P.2d 737, 738 (Colo. Ct. App. 1986).

2. Burden of Proof

The City asserts that the record of proceedings does not establish that the hearing examiner improperly placed the burden of proof on the permit applicant. We disagree.

■ The City is correct that the initial burden of proving the existence of a nonconforming use is on the land user

making the assertion. 8A E. McQuillin, *Municipal Corporations* § 25.188a (3d ed. 1986); *Jacobs v. Mishawaka Bd. of Zoning Appeals*, 182 Ind. App. 500, 507, 395 N.E.2d 834, 839 (1979). However, once a nonconforming use is established, the burden shifts to the party claiming abandonment or discontinuance of the nonconforming use to prove such. "Whether abandonment has occurred is a question of fact as to which the municipality has the burden of proof." 8A E. McQuillin, *Municipal Corporations* § 25.191. *See also Jacobs*, at 839. This burden of proof is not an easy one.

> The abandonment of a nonconforming use ordinarily depends upon a concurrence of two factors: (a) An intention to abandon; and (b) an overt act, or failure to act, which carries the implication that the owner does not claim or retain any interest in the right to the nonconforming use.

(Footnote omitted.) 8A E. McQuillin, *Municipal Corporations* § 25.192. *See also Jacobs*, at 507; *Andrew v. King Cy.*, 21 Wn. App. 566, 572, 586 P.2d 509 (1978), *review denied*, 91 Wn.2d 1023 (1979); *Dorman v. Mayor & City Coun.*, 187 Md. 678, 51 A.2d 658, 661 (1947); *California Car Wash of Allentown, Inc. v. Zoning Hearing Bd.*, 98 Pa. Commw. 209, 510 A.2d 931, 933 (1986); *Derby Ref. Co. v. Chelsea*, 407 Mass. 703, 555 N.E.2d 534 (1990).[1]

In the present case the hearing examiner seemed to give little weight to the fact that, in 1972, the City had previ-

---

[1] A growing minority of states hold that voluntary nonuse of the property in question for the time specified in a discontinuance ordinance terminates the nonconforming use, regardless of the intent to abandon. *See Hartley v. Colorado Springs*, 764 P.2d 1216, 1227 (Colo. 1988); *Martin v. Beehan*, 689 S.W.2d 29, 32 (Ky. Ct. App. 1985); *Anderson v. Paragould*, 16 Ark. App. 10, 11-12, 695 S.W.2d 851, 852 (1985); *Union Square Ass'n, Inc. v. Marc Lounge, Inc.*, 75 Md. App. 465, 470-72, 541 A.2d 1321, 1324, *cert. denied*, 313 Md. 612, 547 A.2d 189 (1988); *Texas Nat'l Theatres, Inc. v. Albuquerque*, 97 N.M. 282, 287, 639 P.2d 569, 574 (1982); *Sun Oil Co. v. Board of Zoning Appeals*, 57 A.D.2d 627, 628, 393 N.Y.S.2d 760, 762 (1977).

At least two cases have stated, in dictum, that failure to make any use of the premises for an extended period of time might evidence an intent to abandon any profitable use so that the nonconforming privilege would be lost. *Dobbs v. Board of Appeals*, 339 Mass. 684, 686-87, 162 N.E.2d 32, 34 (1959); *McCoy v. Knoxville*, 41 Ill. App. 2d 378, 386-87, 190 N.E.2d 622, 626 (1963).

ously recognized a nonconforming commercial use of the property at issue. The hearing examiner stated in his decision of March 8:

> To change the use of the residential zoned property to a commercial zone at this time because of supplemental commercial activity that may have occurred on-site is not warranted. The limited activity does not warrant a Non-Conforming Use status . . ..

Here the hearing examiner erred. Because Van Sant had established the prior existence of a nonconforming commercial use, the burden shifted to the City to prove abandonment or discontinuance of that nonconforming use. The City should have been required to show (1) intent and (2) an overt act or failure to act which demonstrates that the owner does not claim or retain an interest in the right to the nonconforming use. The hearing examiner's requirement that Van Sant prove that the nonconforming commercial use had continued and had not been abandoned indicates that this burden was improperly placed on the owner of the vested property interest.

The City asserts, in the alternative, that even if the hearing officer erred in allocation of the burdens of proof, the burden of proof issue is a red herring because the hearing examiner allowed in all evidence without restriction and made credibility determinations. Therefore, the City concludes, a remand would be a waste of time. We disagree.

■ The result of the hearing examiner's misallocation of the burdens of proof was not minor. Nonconforming uses are vested property rights which are protected. *Missouri Rock, Inc. v. Winholtz*, 614 S.W.2d 734, 739 (Mo. Ct. App. 1981); *Martin v. Beehan*, 689 S.W.2d 29, 31 (Ky. Ct. App. 1985). Protected property rights cannot be lost or voided easily. There is properly a high burden of proof that must be met by the City before Van Sant loses what was a vested property right.

Here, the burden of proof is an important factor. The neighbors are saying that there is no nonconforming use. On the other hand, the property owner and his employees claim

that there is a nonconforming use. Because an arbitrary and capricious standard applies to that factual determination, the burden of proof may well decide who wins the case. Therefore, if the City is unable to prove (1) intent to abandon and (2) action or failure to act that would constitute abandonment, Van Sant gets to keep his nonconforming use.

Next, the City asserts that under *State ex rel. Lige & Wm. B. Dickson Co. v. Pierce Cy.*, 65 Wn. App. 614, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992), the landowner claiming a nonconforming use has the burden of establishing all the elements of a nonconforming use. In *Pierce* the Court of Appeals affirmed a hearing examiner's finding of a nonconforming use where the property owner had used his property as a storage yard for equipment and materials both before and after the zoning changed to prohibit such activity. *Pierce*, 65 Wn. App. at 623.

However, *Pierce* is distinguishable as it involved whether the landowner could *establish* a nonconforming use, not whether a previously established nonconforming use had been abandoned. *Pierce*, 65 Wn. App. at 616. We believe that the *Pierce* court intended no departure from the normal burden of proof rules. But to the extent it may have so intended, we respectfully disagree.

In conclusion, misallocation of the burden of proof was a significant error, warranting affirmance of the trial court's remand of the case.

### 3. Reviewing the Evidence

■ ■ Next, the City asserts that in setting aside the hearing officer's decision the trial court improperly substituted its judgment on the issue of business license and business tax records. On factual questions the reviewing court cannot substitute its interpretation of the facts for the agency's interpretation or reweigh the evidence. *Franklin*, at 325; *Balser Invs., Inc. v. Snohomish Cy.*, 59 Wn. App. 29, 36-37, 795 P.2d 753 (1990). Rather, the superior court, like this court, must review the agency decision for arbitrary and

capricious actions. *Balser*, at 36-37. However, as this appeal requires a review of the agency action, rather than a review of the superior court record, the conclusions of the trial court are surplusage and do not require further analysis. *Grader*, at 879.

### 4. Business License and Taxes

The City contends that the trial court's other basis for reversal, that the hearing examiner improperly relied on the absence of business licenses and records and tax records, is not supported by the record. We disagree.

In examining the record, the hearing examiner's decision does indeed appear to be based primarily, and improperly, on the absence of a business license and tax records. In his original decision the hearing examiner stated that:

> The weakness in the Applicant's argument is the fact that no licensed or taxed commercial activity has occurred on the site. At no time during the previous ownership was there a Business License issued by the City of Everett for the business activity on-site; and, at no time during the previous ownership were Business and Occupation taxes ever paid to the City of Everett for the business conducted on site.
>
> . . . .
> . . . Thus, because no official or documented activity has been transacted on the property, the use cannot be considered non-conforming for commercial use in the R-2 zone.

Similarly, in his decision concerning the request for reconsideration the hearing examiner made the following conclusions:

> The activity on the subject property in the past has been in conjunction with other business uses. However, there were no business records, taxation records or any permits from the City of Everett with regard to the commercial activity of the subject property noted.
>
> . . . .
> The use must have lawfully existed. No evidence has been submitted to prove that the use was a legal commercial use.

Courts have repeatedly found that licensing and other regulations *unrelated* to land use approval, whether business licensing, business and occupation tax regulations, or building

permits, are not per se determinative of the continuance of a nonconforming use. In *Hooper v. St. Paul*, 353 N.W.2d 138, 141 (Minn. 1984), the Minnesota Supreme Court reversed a trial court's determination that a nonconforming use was lost, in part because the property owners failed to get a building permit for a carriage house. The court held that "[v]iolations of ordinances unrelated to the land use planning do not render the type of use unlawful." *See also Bartz v. Board of Adj.*, 80 Wn.2d 209, 221, 492 P.2d 1374 (1972) (affirming permit to expand a nonconforming use and stating that there existed a different forum to seek remedy for ordinance violations); *Derby Ref. Co. v. Chelsea*, 407 Mass. 703, 711, 555 N.E.2d 534, 539 (1990) (rejecting argument that absence of a requisite governmental approval invalidated a nonconforming use); *Trailer City, Inc. v. Board of Adj.*, 218 N.W.2d 645, 648 (Iowa 1974) (failure of owners of mobile home park to renew health license did not void park's status as nonconforming use); *Board of Selectmen v. Monson*, 355 Mass. 715, 716, 247 N.E.2d 364, 365 (1969) (failure to get license did not void nonconforming use where defect can be easily remedied); *Mellow v. Board of Adj.*, 565 A.2d 947, 955 (Del. Super. Ct. 1988) (failure to get license does not void nonconforming use where law violated does not relate to zoning), *aff'd*, 567 A.2d 422 (Del. 1989).

Moreover, the City's cases are distinguishable. In *In re Chamberlin*, 134 Vt. 359, 360 A.2d 100 (1976) there was no previous finding of a nonconforming use. In *Smalls v. Board of Standards & Appeals*, 28 Misc. 2d 147, 211 N.Y.S.2d 212 (Sup. Ct.), *aff'd*, 14 A.D.2d 548, 218 N.Y.S.2d 1005 (1961), the New York Supreme Court held a nonconforming use void where the landowner had relied on an illegal permit. The court held that the landowner's right to nonconforming use had never actually vested. *Smalls*, at 148. In contrast, in the present case the nonconforming commercial use clearly vested in 1972.

■ Still, violation of such ordinances may be evidence of an intent to abandon and may constitute an overt objective

failure to act, as noted in *Sullivan v. Zoning Bd. of Adj.*, 83 Pa. Commw. 228, 478 A.2d 912 (1984):[2]

> Consequently, the abandonment of a nonconforming use and the consequent termination of any legal rights thereto results from a concurrence of facts, circumstances, and the intention of the owner of the premises or other person entitled to the use." The intent cannot be inferred from or established by a period of nonuse alone, but must be shown by the owner or occupier's overt acts or failure to act, such as written or oral statements evincing an intent to abandon the use, structural alterations to the building inconsistent with the continuance of the nonconforming use, or failure to take some step such as license renewal necessary to the continuance of the use.

*Sullivan*, at 234-35 (quoting in part *Marchese v. Norristown Borough Zoning Bd. of Adj.*, 2 Pa. Commw. 84, 95, 277 A.2d 176, 183 (1971)).

Moreover, there is evidence in the record on appeal that the City of Everett business license ordinance is not entirely *unrelated* to land use planning. Everett Municipal Code 5.04-.020 is regulatory in purpose. Section 5.04.030(A)(3) requires applicants to comply with zoning ordinances. Section .030(B) provides that failure to so comply is grounds for denial or revocation of licenses. Section .030(C) provides that these requirements do not apply to general business license and business and occupation taxes assessed under chapter 3.24 of the code. Finally, Everett Municipal Code 5.04.060(B) enables the director of community development to inspect locations of proposed business establishments to determine whether the property is in conformity with the zoning code. In sum, the provisions of chapter 5.04 appear to have a dual purpose of ensuring compliance with land use regulations and are not entirely unrelated.

Thus, it was proper for the hearing examiner to consider the property owner's failure to comply with chapter 5.04 in

---

[2]*Sullivan* was abrogated as an incorrect statement of the law regarding amortization provisions in zoning ordinances. *PA Northwestern Distribs., Inc. v. Zoning Hearing Bd.*, 526 Pa. 186, 584 A.2d 1372 (1991). However, the abrogation does not affect *Sullivan*'s logic regarding abandonment of nonconforming uses.

determining whether the nonconforming commercial use had been abandoned. However, failure to comply with chapter 5.04 is not per se determinative of the question of whether the nonconforming use status had been abandoned. The examiner must look at the totality of the circumstances. We affirm the trial court on this point.

## 5. Multifamily Residential Use

Van Sant also contends that he should be allowed a nonconforming multifamily residential use for the upper level of the building. However, no nonconforming residential use was ever established. In 1972, when the City's board of adjustment approved the "non-conforming commercial structure for commercial purposes", the board also noted that the property could not be successfully renewed for residential use at that time. Thus, the burden of proof of establishing a nonconforming use was properly on Van Sant.

■ However, all he could show was that the prior owner's children resided there from time to time. In 1974, during Cole's ownership, the property was posted as unlawful to occupy for dwelling purposes. Paine testified that Cole was uncooperative in getting proper permits for residential use of the structure and in bringing the structure up to code. This evidence falls short of even a prima facie showing that a nonconforming use was established for multifamily occupancy of the second floor without color of the City's approval.

Therefore, that portion of the hearing examiner's ruling denying Van Sant a nonconforming residential use is affirmed and reinstated, and the trial court's ruling, to the extent that it reversed such portion of the hearing examiner's decision, is reversed.

## CONCLUSION

We reverse the Superior Court and reinstate the hearing examiner's decision concerning the nonconforming residential use on the second floor of the building at issue. As for the ground floor, we affirm the court's order of remand. The trial court's ruling as to the burden of proof is affirmed. We

modify the court's holding as to violations of ordinances. Violations of ordinances do not per se result in abandonment of a nonconforming use. However, such violations may be considered in determining whether there was (1) an intent to abandon and (2) action which would constitute abandonment.

COLEMAN and FORREST, JJ., concur.