16 P.3d 701 (2001)
104 Wash.App. 525
SKAMANIA COUNTY, Appellant,
v.
Chris WOODALL, Respondent, and
Columbia River Gorge Commission, Intervenor-Respondent.
No. 25204-0-II.
Court of Appeals of Washington, Division 2.
January 26, 2001.
*703 Bradley W. Andersen, Skamania County Pros. Office, Stevenson, for Appellant.
Jonathon Aurel Gurish, Asst. Atty. Gen., Olympia, Gary Keith Kahn, Reeves, Kahn & Eder, Portland, OR, for Respondents.
*702 HOUGHTON, J.
The Skamania County Board of Adjustment ruled that Washington law requires a person seeking to prove a land occupier has discontinued a nonconforming use to prove that the land occupier intended to discontinue that use. On appeal, the Columbia River Gorge Commission ignored Washington law and ruled that the term "discontinued" did not contain an intent element. The superior court affirmed the Commission, and Skamania County appeals. We reverse and remand to the Commission for further proceedings.

FACTS

Background
In 1986, President Reagan signed into law the Columbia River Gorge National Scenic Area Act (the Act), which created the Columbia River Gorge Commission (the Commission). See Columbia River Gorge National Scenic Area Act of 1986, PL 99-663, 100 Stat. 4274 (codified at 16 U.S.C. §§ 544-544p). Washington and Oregon made the Act effective by agreeing to the Columbia River Gorge Compact (the Compact), which adopted the Act as state law. RCW 43.97.015; OR.REV.STAT. § 196.150.
Backers of the Act began lobbying Congress in 1980. Bowen Blair, Jr., The Columbia River Gorge National Scenic Area: The Act, Its Genesis and Legislative History, 17 ENVTL.L. 863, 881 (1987). One of the principal issues in the six-year debate was who would control land use regulations, especially in the places eventually designated as "Special Management Areas." Blair, supra, at 899. Backers wanted to follow the Cape Cod formula, where the federal government required local land use regulations to be consistent with federal rules. Blair, supra, at 952. President Reagan opposed federal control because he argued federal zoning was unconstitutional. Blair, supra, at 920.
To resolve this concern, Congress adopted a compromise the backers developed. Although this compromise gave the counties a large role in administering their land use ordinances, and gave the Secretary of Agriculture (the Secretary) a role in overseeing land management, it also gave a large role to a Commission comprised of Oregon and Washington citizens. The compromise provided that the Secretary and the Commission would adopt an overall Management Plan. 16 U.S.C. § 544f(f). The counties would then adopt local land use ordinances, and submit them to the Commission, which would ensure the ordinances were consistent with its Management Plan. 16 U.S.C. § 544f(h)(2), (i)(1). If the Commission did not approve the ordinance, the county could revise it, or the Commission would impose a plan on the county. 16 U.S.C. § 544f(i)(2)-(3), (l). If the Commission approved the ordinance, the Commission would send it to the Secretary for approval. 16 U.S.C. § 544f(j). If the Secretary approved the ordinance, the counties would enforce it and the Commission would serve merely as an appellate administrative body. 16 U.S.C. § 544m(a)(2). If the Secretary did not approve the ordinance, the Commission could either send the ordinance back to the county for revision, or override the Secretary's veto with a two-thirds vote. 16 U.S.C. § 544f(j)-(l). A county could submit a land use ordinance at any time, even after the Commission imposed its plan on that county. 16 U.S.C. § 544f(m). See generally Columbia River Gorge United-Protecting People & Prop. v. Yeutter, 960 F.2d 110, 112 (9th Cir.) (giving an overview of this process), cert. denied, 506 U.S. 863, 113 S.Ct. 184, 121 L.Ed.2d 128 (1992). The Act gave state courts jurisdiction over almost all challenges to the Commission's actions. 16 U.S.C. § 544m(b)(6).
The Secretary and the Commission completed the final Management Plan in 1992. Under "EXISTING USES," it provides:

*704 1. Except as otherwise provided, any use or structure existing on the effective date of the Management Plan may continue, as long as it is used in the same manner and for the same purpose as on that date.
....
3. Replacement or reestablishment of a use or structure discontinued for 1 year shall be subject to the policies and guidelines in the Management Plan.
...
....
10. Except as otherwise provided, whether a use has a vested right to continue will be determined by the law on vested rights in the appropriate state.
MANAGEMENT PLAN FOR THE COLUMBIA RIVER GORGE NATIONAL SCENIC AREA at II-87 to II-98 (1992). The Commission approved Skamania County's land use ordinance on existing uses, which provides:
1. Except to the extent specifically set forth below, any use or structure existing on October 15, 1991[,] may continue so long as it is used in substantially the same manner and for the same purpose as on that date.
2. Replacement or reestablishment of a use or structure discontinued for one year shall be subject to the provisions of this Title.
SKAMANIA COUNTY CODE § 22.06.090.

Procedural Posture Below
In summer 1995, the director of the Skamania County Department of Planning and Community Development approved Scott Anderson's[1] application to run a mobile home park in a Special Management Area of the Columbia River Gorge, finding it had been a mobile home park prior to the new zoning rules and, thus, was a valid nonconforming use. Chris Woodall, the owner of a neighboring mobile home park, appealed and asserted that the prior owners had discontinued using the site for over one year, and thus forfeited the nonconforming use.[2] The Skamania County Board of Adjustment affirmed the director's ruling, agreeing that Washington law required Woodall to prove that the prior owners intended to discontinue using the site as a mobile home park before they could lose their vested right. Woodall appealed to the Columbia River Gorge Commission under 16 U.S.C. § 544m(a)(2), arguing that the Board had applied the wrong legal standard and that the facts did not support the Board's findings.
The Commission reversed the Board of Adjustment, finding that the Board applied the wrong legal standard. Refusing to apply Washington law, the Commission found that "discontinued for one year" meant stop using for one year, irrespective of intent. The Commission reasoned that the purpose of the one-year period was to provide an objective test rather than a subjective test like intent. The Commission further found that this interpretation was consistent with its purposes of protecting the Gorge and providing uniform enforcement. Although the Commission did not directly address the Washington authority that was contrary to its interpretation, it asserted that because an interstate compact created it, its interpretation of the law preempted state law.
Having determined that intent was irrelevant, the Commission did not address Woodall's second claim that the facts did not support the Board's conclusion that the land occupiers had not intended to abandon the seven sites at issue.[3]
Skamania County appealed to the superior court. The Commission intervened and argued to affirm. The superior court affirmed the Commission's ruling. Skamania County appeals.
*705 There are two questions on appeal: Was the Commission required to apply federal law or Washington law to resolve issues not resolved by the Act or Management Plan? If the Commission was required to apply Washington law, did it do so properly?

ANALYSIS

I.
The first question has two parts. (A) Whose law must we apply when determining whether the Commission was required to apply federal or Washington law? and (B) Under that law, whose law was the Commission required to apply?

A.
For an interstate compact to be formed under the interstate compact clause of the federal constitution, Congress must consent and the compacting states must consent.[4] Here, the Act evidences Congress's approval and the Compact evidences Washington and Oregon's approval. Thus the Act and the Compact govern the operation of the Commission, including questions of whose law the Commission is required to apply when deciding a land use dispute between parties such as those here.
When construing the Act and Compact, we are governed by federal law. See Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 278, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); see also Cuyler v. Adams, 449 U.S. 433, 438-40, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). To ascertain the meaning of a statute, courts look to the intent of Congress. Negonsott v. Samuels, 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). To determine this intent, courts first look at the plain meaning of the statute. Negonsott, 507 U.S. at 104, 113 S.Ct. 1119. Courts must read each clause in context, considering the meaning of the statute as a whole. Holloway v. United States, 526 U.S. 1, 6-7, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999). Courts then employ ordinary tools of statutory construction, see Regions Hosp. v. Shalala, 522 U.S. 448, 457, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998), such as considering legislative history. Blum v. Stenson, 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).
Courts should not look to an agency's interpretation of a statute unless the intent of Congress is unclear. Norfolk and Western Ry. Co. v. Am. Train Dispatchers Ass'n, 499 U.S. 117, 128, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991). Courts should disregard an agency interpretation of a statute if it is inconsistent with the intent of Congress. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 120 S.Ct. 1291, 1297, 146 L.Ed.2d 121 (2000). Finally, courts should not defer to an agency interpretation of an ambiguous statute if the interpretation is not within the agency's area of expertise. National Ass'n of Gov't Employees, Inc. v. Fed. Labor Relations Auth., 179 F.3d 946, 950 (D.C.Cir.1999); see also Fed. Election Comm'n v. NRA Political Victory Fund, 513 U.S. 88, 97, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994).

B.
Having determined that we must construe the Act and Compact using federal law, we must now determine whether the Act and Compact, when construed according to federal law, require the Commission to apply federal law or Washington law when deciding a zoning matter of this type.[5] For several reasons, we think the Commission should apply Washington law because the Act and Management Plan did not resolve the dispute.
First, Congress's decision not to make the Commission a federal agency suggests it wanted the Commission to apply state law. Had Congress wanted the Commission to apply federal law, it could have made the *706 Commission a federal agency. But instead the Act provides, "The Commission ... shall not be considered an agency or instrumentality of the United States for the purpose of any Federal law[.]" 16 U.S.C. § 544c(a)(1)(A).[6]
Second, Congress's decision to give state courts almost exclusive jurisdiction over appeals from Commission action suggests Congress intended the Commission to apply state law. Had Congress wanted the Commission to apply federal law, it would have placed appeals from the Commission primarily in the federal courts. But instead it placed appeals almost exclusively in the state courts.[7]See 16 U.S.C. § 544m(b)(6). Federal courts do not even have concurrent jurisdiction over the issues the Act provides are to be decided in state courts. Broughton Lumber Co. v. Columbia River Gorge Comm'n, 975 F.2d 616, 621 (9th Cir.1992), cert. denied, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993).
Third, the legislative history suggests Congress did not want the Commission applying federal law to a zoning case like this. The backers of the Act made specific changes to address President Reagan's concerns that the Act would amount to federal zoning laws. See Blair, supra, at 920. A substantial amount of the Commission's work is zoning. If courts were to review Commission actions under federal law, this would raise the specter of federal zoning. Moreover, "[t]here is... no federal law of zoning,"[8] so it is unclear what courts would apply.
Fourth, Congress's approval of the Compact suggests it wanted the Commission to apply state law. Congress approved the Compact, knowing it expressly provided that "the provisions of [the Columbia River Gorge Compact] hereby are declared to be the law of this state." RCW 43.97.015.
Fifth, Congress's decision not to dictate that federal law apply suggests it intended the Commission to apply state law. When Congress placed jurisdiction almost exclusively in the state courts, it did not command the state courts to apply federal law. Congress had to know that absent such a command, Washington state courts are required to apply Washington state common law. See RCW 4.04.010 ("The common law, so far as it is not inconsistent with the Constitution and laws of the United States, or of the state of Washington nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state."); see also Price v. Kitsap Transit, 125 Wash.2d 456, 463, 886 P.2d 556 (1994) ("[A] statute will not be construed in derogation of the common law unless the Legislature has clearly expressed its intention to vary it.").
Moreover, a state may reserve the right to have its laws apply to an interstate compact commission. See Seattle Master Builders Ass'n v. Pac. N.W. Elec. Power & Conservation Planning Council, 786 F.2d 1359, 1371 (9th Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). As noted, by statute and judicial decision, all Washington statutes are interpreted by Washington courts under Washington common law unless the Legislature expresses otherwise. See RCW 4.04.010;[9]Price, 125 Wash.2d at 462, 886 P.2d 556. Nothing in the Compact or the Act can be interpreted as a clearly expressed intention of the Legislature to give the Commission the authority to ignore Washington common law when interpreting a Washington State county ordinance. Further, the Act reserves a prominent role for county ordinances, for county officials interpreting those ordinances, *707 and for state courts. By expressly reserving this role for the counties and state courts, the Act preserves some degree of local control and uses local and state expertiseexpertise that will be in state common law, not federal law or some undefined "Commission law."[10] Thus, RCW 4.04.010 and the Act's prominent role for state courts and county officials serve the requirement of Seattle Master Builders that the Legislature reserves the state's right to have its common law applied to the Commission.[11]
Sixth, the Management plan suggests the Commission thought Congress had at least allowed it to apply state common law in cases involving vested rights. Section 10 of the Existing Uses portion of the Commission's Management Plan provides that state law applies when dealing with issues of vested rights:
Except as otherwise provided, whether a use has a vested right to continue will be determined by the law on vested rights in the appropriate state.
MANAGEMENT PLAN, supra, § 10 at II-89. If the Act required the Commission to follow federal common law instead of state common law, then the Commission could not have dictated that state law applied when dealing with vested rights.
The Commission argues that section 10 does not apply because it is referring to the vested rights doctrine. We disagree. In Washington, "[t]he right to continue a nonconforming use despite a zoning ordinance which prohibits such a use in the area is sometimes referred to as a `protected' or `vested' right." Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wash.2d 1, 6, 959 P.2d 1024 (1998). A zoning ordinance may provide for the phase out of nonconforming uses, but may not require a property owner immediately to cease a nonconforming use. Rhod-A-Zalea, 136 Wash.2d at 7, 959 P.2d 1024.
In addition to this broad definition of vested rights, Washington also recognizes the "vested rights doctrine." Rhod-A-Zalea, 136 Wash.2d at 16, 959 P.2d 1024. Under this doctrine, a person who has completed a building permit application has a vested right to have that application processed according to the laws in effect upon submission of the application. Rhod-A-Zalea, 136 Wash.2d at 16, 959 P.2d 1024. This doctrine only provides a right to have the application processed under existing rules; it does not provide a right to have any particular law or regulation apply to the location or use after the application is approved. Rhod-A-Zalea, 136 Wash.2d at 15-16, 959 P.2d 1024.
Based upon the plain meaning of section 10 of the Management Plan, that section discusses the general phrase "vested rights," not the vested rights doctrine. First, this is apparent because the section provides that "a use has a vested right to continue." MANAGEMENT PLAN, supra, at II-89 (emphasis added). The vested rights doctrine does not concern a use because "the doctrine applies only to permit applications." Rhod-A-Zalea, 136 Wash.2d at 16, 959 P.2d 1024. Once a use is established (and thus able to continue), "this doctrine has no bearing." Rhod-A-Zalea, 136 Wash.2d at 16, 959 P.2d 1024. If we were to accept the Commission's interpretation of this clause, we would have to find that the term "use" refers to an application, not an actual use. Second, it is apparent because of section 10's placement in the Management Plan. It appears in a part entitled "EXISTING USES." MANAGEMENT PLAN, supra, at II-87 to 89. Sections 1-9 all deal with nonconforming uses. Thus, logically section 10 must also deal with nonconforming uses, meaning that the phrase "vested rights" includes nonconforming uses. Finally, it is apparent because the term "use" is used throughout this part of the Management Plan to refer to existing uses, not just a right *708 to have an application processed under particular rules. See MANAGEMENT PLAN, supra, at II-87 to 89. Thus, the term "use" in section 10 should be given the same meaning.
The Commission quotes Noble Manor Co. v. Pierce County, 133 Wash.2d 269, 943 P.2d 1378 (1997), and argues that case holds that vested rights in Washington only involve the vested rights doctrine. In that case, the Supreme Court stated:
The resolution of this case turns on the meaning of RCW 58.17.033, the statute codifying the "vested rights doctrine" as it applies to subdivisions and short subdivisions. In Washington, "vesting" refers generally to the notion that a land use application, under the proper conditions, will be considered only under the land use statutes and ordinances in effect at the time of the application's submission.

Noble Manor Co., 133 Wash.2d at 275, 943 P.2d 1378 (emphasis added). The Commission, by only quoting the italicized portion of this quotation, finds support for its argument. But when the quotation is read as a whole, it is clear that the term "vesting" in the second sentence is referring back to the phrase "vested rights doctrine" used in the first; it is not limiting the meaning of "vesting" in every case.[12] And, of course, our Supreme Court referred to nonconforming uses as vested rights. See Rhod-A-Zalea, 136 Wash.2d at 6, 959 P.2d 1024.
Accordingly, section 10 dictates that the Commission should have used state law to determine the meaning of "discontinued" in section 3. "Administrative agencies are bound by their own rules." Deffenbaugh v. DSHS, 53 Wash.App. 868, 871, 770 P.2d 1084 (1989).[13] Section 10 instructs the Commission to use state law to determine the scope of vested rights. "Nonconforming uses are vested property rights," so section 3 deals with a vested right. See Van Sant v. City of Everett, 69 Wash.App. 641, 649, 849 P.2d 1276 (1993). It provides that the right to nonconforming uses terminates if the use is discontinued for more than one year. The Management Plan does not define the word "discontinued." Therefore, under section 10, the Commission should have looked to state law to define "discontinued."
The Commission makes two additional arguments, but neither has merit. First, the Commission argues that section 3 and section 10 continue policies from the Interim Guidelines, where it was clear that the phrase "vested rights" referred to the vested rights doctrine. This argument is flawed because the meaning of section 10 is unambiguous, so there is no need to resort to the Interim Guidelines to help interpret it.
Second, the Commission argues that section 3 satisfies the first clause in section 10 "Except as otherwise provided"and, thus, instead of looking to state law for this question, the court should look to section 3. This argument is circular because we are trying to determine the meaning of "discontinued" in section 3. Section 3 is ambiguous so the court cannot look to section 3 for section 3's meaning. Nowhere in the Management Plan is "discontinued" defined and nowhere does the Management Plan instruct that some other law besides state law governs questions of vested rights not decided in sections 1-9.
*709 For these reasons and based upon federal law, we conclude Congress intended the Commission to apply Washington common law to resolve zoning disputes, such as the one before this court, when the Act or Management Plan does not provide a solution. The Commission's ruling to the contrary does not warrant deference because it is in conflict with the intent of Congress, and because choice of law questions are not within the Commission's area of expertise. See Brown & Williamson, 120 S.Ct. at 1297; Nat'l Ass'n of Gov't Employees, 179 F.3d at 950. The Commission erred when it decided to ignore Washington law when defining the term "discontinued."

II.
Next we must decide what a party must do to prove a land occupier has discontinued using a nonconforming use under Washington law. The land occupier has the initial burden of proving the existence of a nonconforming use. Van Sant, 69 Wash. App. at 647-48, 849 P.2d 1276. Once the land occupier establishes this nonconforming use, the burden shifts to the person claiming that the right has been extinguished to prove that this has in fact occurred. Van Sant, 69 Wash.App. at 648, 849 P.2d 1276.
Here, the Skamania County ordinance provides that a land occupier loses the right to continue a nonconforming use if the use was "discontinued for one year." SKAMANIA COUNTY CODE 22.06.090. Under Washington law, to prove a land occupier has discontinued using a nonconforming use, a person seeking to prove discontinuance has the burden of proving:
(a) An intention to abandon; and (b) an overt act, or failure to act, which carries the implication that the owner does not claim or retain any interest in the right to the nonconforming use.
Van Sant, 69 Wash.App. at 648, 849 P.2d 1276 (quoting 8A E. MCQUILLIN, MUNICIPAL CORPORATIONS § 25.192 (3d Ed.1986)); see also King County v. High, 36 Wash.2d 580, 582-83, 219 P.2d 118 (1950). If the ordinance references a time framesuch as discontinued for one yearthen once the person seeking to prove discontinuance proves the land occupier has not used the property for that time period, a rebuttable presumption arises that the land occupier has intended to abandon the nonconforming use. City of Univ. Place v. McGuire, 102 Wash. App. 658, 671, 9 P.3d 918 (2000); see also High, 36 Wash.2d at 582, 219 P.2d 118.
Here, the Commission did not address whether the evidence before the Board supported its finding that the land occupiers did not intend to abandon the seven sites in the mobile home park. Therefore, we must remand to the Commission to decide this issue, based solely upon the evidence that was previously submitted to the Board. See supra note 3.
Reversed and remanded for further proceedings consistent with this opinion.
MORGAN, P.J., and WANG, J.P.T., concur.
NOTES
[1] Anderson sold the park and the current owners are not a party in this appeal.
[2] The mobile home park initially had 10 sites. It is not disputed that three of these sites were in continuous use at the time of the Board's ruling in 1995.
[3] The Commission recognized that Woodall was also challenging whether there was substantial evidence to support the Board's conclusions, but did not address that challenge because it found the legal issue "paramount." Clerk's Papers at 8. This evidence is contained in the record the Commission transmitted to the superior court.
[4] See U.S. CONST. art. I, § 10, cl. 3 ("No State shall, without the consent of the congress, ... enter into any agreement or compact with another state[.]"). Because a compact requires congressional consent, Congress's intent controls over state intent. See Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 278 & n. 4, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).
[5] The only other possibility is Oregon law, and neither party argues it should apply.
[6] Cf. Lakeview Dev. Corp. v. City of S. Lake Tahoe, 915 F.2d 1290, 1295 (9th Cir.1990) (reviewing the Tahoe Regional Compact and holding that although the compact was incorporated into federal law, "it did not make applicable the entire panoply of federal administrative and substantive standards.") (internal quotation omitted), cert. denied, 501 U.S. 1251, 111 S.Ct. 2890, 115 L.Ed.2d 1055 (1991).
[7] The only exceptions are criminal prosecutions and lawsuits that involve the Secretary of Agriculture. 16 U.S.C. 544m(b)(5).
[8] League to Save Lake Tahoe v. Crystal Enters., 685 F.2d 1142, 1144 (9th Cir.1982).
[9] Although RCW 4.04.010 was not included in the Compact itself, it is a statute that applies to all Washington legislation and thus it became part of the Compact, RCW 43.97.015.
[10] It is also worth noting the Commission bases much of its argument upon Washington law.
[11] Our decision in Tucker v. Columbia River Gorge Comm'n, 73 Wash.App. 74, 77-79, 867 P.2d 686 (1994), where we held that state zoning standards of review applied to a review of Commission actions, is consistent with this conclusion. The superior court relied heavily upon an unpublished decision, Andersen v. Columbia River Gorge Comm'n, No. 18370-6-II (Wash.App. Dec. 13, 1996). Unpublished opinions have no precedential value and should not be cited or relied upon in any manner. See RAP 10.4(h).
[12] The Commission's quotation from Westside Bus. Park, L.L.C. v. Pierce County, 100 Wash.App. 599, 608, 5 P.3d 713, review denied, 141 Wash.2d 1023, 10 P.3d 1075 (2000), must also be read in context. There, we stated:

The County contends that Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wash.2d 1, 959 P.2d 1024 (1998), requires the finding that the vested rights doctrine does not apply to regulations that do not affect use. But Rhod-A-Zalea is not a vested rights case; it involved a nonconforming use. The Court found that Rhod-A-Zalea's valid nonconforming use nonetheless did not exempt it from reasonably enacted police power regulations for the health, safety and welfare of the community.
Westside, 100 Wash.App. at 608, 5 P.3d 713. The Commission bolds the second sentence and asserts that nonconforming uses are not vested rights. But read in context, the term "vested rights" in the second sentence is referring to the vested rights doctrine in the first sentence. We agree that nonconforming uses are not part of the vested rights doctrine; rather, they are vested rights. Thus, Westside does not support the Commission's argument.
[13] See also Panhandle E. Pipe Line Co. v. Fed. Energy Regulatory Comm'n, 613 F.2d 1120, 1135 (D.C.Cir.1979) (it is "axiomatic that an agency is bound by its own regulations"), cert. denied, 449 U.S. 889, 101 S.Ct. 247, 66 L.Ed.2d 115 (1980).