108 P.3d 134 (2005)
FRIENDS OF the COLUMBIA GORGE, INC., Appellant,
v.
COLUMBIA RIVER GORGE COMMISSION, Respondent.
No. 21773-6-III.
Court of Appeals of Washington, Division 3, Panel One.
March 3, 2005.
*135 Gary K. Kahn, Reeves, Kahn & Hennessy, Portland, OR, for Appellant.
Jeffrey B. Litwak, Columbia River Gorge Commission, White Salmon, OR, for Respondent.
SWEENEY, J.
¶ 1 Friends of the Columbia Gorge, Inc. challenge findings relied upon by the Columbia River Gorge Commission in granting a petition to expand a federally defined "urban area." We conclude that these findings are supported by this record and we affirm the trial court's decision to that effect.

FACTS
¶ 2 Congress passed the Columbia River Gorge National Scenic Area Act, 16 U.S.C. §§ 544-544p (Act). The Act creates special management areas in which land use and development are regulated. 16 U.S.C. § 544b(a)(2)(A). The boundaries of autonomous urban areas are then established and fixed. 16 U.S.C. § 544b(e). The city of Stevenson in Skamania County is one such urban area. 16 U.S.C. § 544b(e)(1). The Act also created the Columbia River Gorge Commission (Commission), a Washington-Oregon interstate compact, to oversee the implementation of the Act. 16 U.S.C. § 544c. The Washington legislature adopted the terms of the Act and the compact as Washington law. RCW 43.97.015.
¶ 3 In crafting the Act, Congress invited towns within proposed scenic areas to submit maps of their projected long-term urban areas. At its southwestern corner, Stevenson's projected urban area extended to its city limits and included a 36-acre triangle that is now the subject of this dispute. The Stevenson urban area boundary as eventually drawn by U.S. Congressional staffers incorporates 3,000 acres, of which 613 are within the Stevenson city limits. Most of the excess extends north, away from the gorge. But the disputed 36-acre triangle was excluded from the urban area and placed instead within the restricted special management area.
¶ 4 The 36 acres comprise parts of three parcels that were split by the boundary between the urban and general management areas. The largest piece, 17.6 acres, has already been developed after the Commission granted a variance in 1991 to extend the Skamania Lodge golf course. The remaining two parcels are 16.2 acres and 2.2 acres, respectively. These approximately 18 acres are unsuitable either for agriculture or for timber production. In addition to their small size, they are isolated from neighboring timberland and already include some residences. A one-half acre pond and wetland lies close to the single family residence on the 16.2 acre parcel. The 36 acres were annexed by Stevenson in 1974, and have been included in the city's long-range population growth planning ever since. When the proposed urban map was published, the owners of the 16.2-acre parcel began petitioning the Commission to reform the Stevenson urban boundary.
¶ 5 But the Act empowers the Commission to expand an urban area only upon finding that four revision criteria are met. The criteria are found at 16 U.S.C. § 544b(f)(2)(A) through (D). The parties call these the 4(f) criteria. Criterion (A) is a demonstrable need to accommodate future population *136 growth or to meet economic need. The others are variations on demonstrable compatibility of the urban expansion with the Act's purpose of preserving of the scenic area.
¶ 6 The Commission first took the position that the offending boundary was not an error and that Congress never intended every urban area to coincide precisely with existing city limits. But in 1997, the Commission declared that this and a couple of other exclusions were "mapping errors." With the help of the Commission staff, Skamania County filed a revision request. The Commission staff officially recommended approval, and a public hearing was held as required by the Act to consider whether the 4(f) criteria had been met.
¶ 7 The Friends of the Columbia Gorge (Friends) opposed the revision. The Friends characterized the revision as an expansion of Stevenson's urban area and called it "urban sprawl." The Friends alleged the county's application did not meet the 4(f) criteria as strictly construed. The county insisted it was not asking for an expansion, but simply trying to avoid the negative consequences of a manifest mapping error. The county conceded that it could not meet the first part of criterion (A) relating to long-range population growth. Instead, its application pleaded the alternative grounds, "economic needs consistent with the management plan." 16 U.S.C. § 544b(f)(2)(A).
¶ 8 After a public hearing, the Commission approved the revision after entering findings of fact, conclusions of law, and an order. The Friends appealed to the superior court. The superior court concluded that the Commission's findings were supported by substantial evidence, the conclusions were supported by the findings, and the order was neither arbitrary nor capricious.

DISCUSSION
¶ 9 The Friends argue that the Act does not provide a mechanism to correct "mapping errors." The Friends contend that the Commission's sole authority to revise urban boundaries comes from 16 U.S.C. § 544b(f)(2), and that Skamania County's application here does not satisfy the 4(f) criteria. The Friends also argue that the 4(f) criteria cannot be met so long as undeveloped lots remain in the existing urban area.
¶ 10 The Commission responds that, mapping error or not, the requirement that the revision be justified by population growth or economic needs is supported by this record, and that evidence of the economic advantages of the revision is clearly substantial.

APPLICABLE LAW
¶ 11 The trial court correctly stated the standard of review for administrative orders: whether the findings are supported by substantial evidence and whether the substantiated findings support the conclusions of law. Batchelder v. City of Seattle, 77 Wash.App. 154, 158, 890 P.2d 25 (1995).
¶ 12 The Columbia River Gorge National Scenic Area Act and the bi-state compact govern the operation of the Commission. Skamania County v. Woodall, 104 Wash.App. 525, 532, 16 P.3d 701 (2001). The compact incorporates federal law. So we apply federal law when interpreting the Act. Id. We look for the intent of Congress, beginning with the plain language of the statute. Id. at 532-33, 16 P.3d 701.
¶ 13 The Act gives state courts jurisdiction over most disputes. 16 U.S.C. § 544m(b)(6); Woodall, 104 Wash.App. at 529, 16 P.3d 701. We therefore apply the procedural rules and standards of review of the Washington Administrative Procedure Act, chapter 34.05 RCW. We will grant relief from an agency action if it is not supported by substantial evidence or is arbitrary and capricious. RCW 34.05.570(3).
¶ 14 The law the Commission interpreted and applied is the Columbia River Gorge National Scenic Area Act, 16 U.S.C. §§ 544-544p. Woodall, 104 Wash.App. at 532, 16 P.3d 701. The Commission correctly interpreted the plain language of the Act as permitting it to make minor revisions upon finding the facts set forth in criteria (A) through (D). 16 U.S.C. § 544b(f)(2).

FINDINGS
¶ 15 The Friends contend that the Commission's findings are not supported by *137 the record. We independently review the agency record for substantial evidence supporting the findings of fact. If the critical findings are supported by the record, we then review de novo the agency's interpretation of the law and its application of the law to the substantiated facts. Bowers v. Pollution Control Hearings Bd., 103 Wash.App. 587, 596, 13 P.3d 1076 (2000).
¶ 16 I. Criterion (A). To establish criterion (A), the Commission must find that a demonstrable need exists to accommodate long-range urban population growth requirements or economic needs consistent with the management plan.
Finding: Because of the disputed triangle's proximity to the Skamania Lodge, its value is enhanced. Adding it to the urban area would permit residential use. This would boost the city's tax base.
¶ 17 The Friends did not dispute the proximity of the property to the lodge or the resulting enhancement of its value. The benefit to the municipal tax base was asserted in the petition at page 62 of the Administrative Record (AR) and was not disputed. The record supports this finding. As evidence of the economic necessity for conforming the urban area to the city limits in the vicinity of the Skamania Lodge, Mary Anne Duncan-Cole, Stevenson's city administrator, testified that the lodge is the county's biggest private sector employer with around 300 people and an $8.3 million payroll. Clerk's Papers (CP) at 96. It is the "linchpin of the City's tourism industry." AR at 62.
Finding: Compatible uses will help protect the atmosphere of the lodge, one of the city's most vital economic assets. Protection of the atmosphere of the lodge is important. The area is not well suited to commercial logging. Logging is one of the few uses allowed in the general management area. A clear-cut adjacent to the lodge could impair its ambiance.
¶ 18 The Friends are correct that there is no evidence that logging is not equally permissible under the municipal ordinances as under federal management. But the Commission could easily infer from Ms. Duncan-Cole's testimony that the owners were likely to clear cut if revision was denied. By contrast, the city wishes to preserve the scenery around the lodge, which would make clear cutting less likely if the area came within the urban area.
Finding: Much of Stevenson's future urban growth will be low density development on the fringe. The subject area lends itself to this sort of growth. If the revision is denied, this housing development will proceed outside the urban area, depriving the city of the tax revenue.
¶ 19 This finding implies that housing development will proceed unabated under federal scenic area management. The record does not support this finding. Unregulated housing development is not permitted under the management area provisions.
¶ 20 The Commission concluded that criterion (A) is satisfied because the revision is necessary to accommodate the city's long-range urban growth population requirements and its economic needs. The record supports the Commission's determination that criterion (A) is satisfied.
¶ 21 II. Criterion (B). Revision of urban areas must be shown to be consistent with the standards established in 16 U.S.C. § 544d(d) and the purposes of the Act.
Finding: Four of the standards relevant to this application are protection and enhancement of agricultural lands, forest lands, open spaces, and recreational resources. The subject land is not suitable for agriculture or logging. Therefore, including it in the urban area will not adversely affect scenic area forest lands.
¶ 22 This finding also is supported by the testimony of Ms. Duncan-Cole. Ms. Duncan-Cole testified that only 9 to 10 acres of the area was timberland, and that logging was commercially unfeasible. She gave a variety of reasons why this was so. These include fragmented ownership, existing uses including the golf course and residence, segregation from nearby forest lands, inadequate road access, high water table, and wetlands.
Finding: The land has no "significant and/or sensitive resources necessary to be considered open spaces." CP at 7. "Open *138 Spaces" refers to how property is designated in the management plan.
¶ 23 We do not have that management plan before us, but Ms. Duncan-Cole testified that this property is designated "woodland." CP at 95. The record includes a letter from the United States Department of Agriculture gorge scenic area manager. He approves the revision and says that no sensitive resources will be affected and that the revision is consistent with the purposes of the Act. This finding is then supported by substantial evidence.
Findings: The only recreational resources are the 17 acres of Skamania Lodge golf course and hiking trails, and these are not affected. The land cannot be seen from any key viewing areas, and the anticipated low to moderate density residential development would not adversely affect scenic resources. The land contains no cultural resources.
¶ 24 These findings are supported by the record and support the conclusion that revision is consistent with the standards established in 16 U.S.C. § 544d(d) of the Act.
¶ 25 III. Criterion (C). This criterion requires a showing that revision of urban area boundaries will result in maximum efficiency of land uses within and on the fringe of existing urban areas.
Findings: The subject area has been within the city limits since 1974. Efficient urban growth dictates that growth and provision of urban services should first occur on lands within city limits before spreading outward into unincorporated areas.
¶ 26 This generally reflects the evidence, particularly the testimony of Ms. Duncan-Cole.
Findings: The subject area is within the city's long-term infrastructure plans and is more likely to be served by urban services before unincorporated lands in the urban area. It is appropriate for the city to target incorporated lands for provision of urban services before unincorporated areas. The revision also will allow urban service expansion and more urban growth to occur inside city limits before reaching unincorporated areas.
¶ 27 These findings reflect the evidence verbatim, and again support efficient land use by incorporating what is now a fringe area. The findings support the conclusion that the revision will result in maximum efficiency of land uses within and on the fringe of the urban area. This determination is supported by substantial evidence.
¶ 28 The Friends did not dispute criterion (D), that the revision will not significantly reduce agricultural land, forest land or open spaces, and do not challenge the Commission's finding that it was satisfied.

OTHER CONSIDERATIONS
¶ 29 There are other considerations which support the Commission's holding here. In its notice of intervention, the city of Stevenson points out that the city limits follow a natural boundary formed by the Bonneville Power Administration's power line. The city also called attention to the administrative difficulties caused by tracts that are within the city limits but outside the city's management jurisdiction.
¶ 30 Next, as evidence that the revision will not adversely affect the natural resources of the area, Ms. Duncan-Cole testified that the county and Commission staff had consulted the best experts available, including wildlife and cultural resource experts and geologists. She named several. The experts uniformly reported that no flora, fauna, geological, cultural, historical, or scenic vista issues exist.
¶ 31 The Friends object that the Commission erroneously based key findings on unsubstantiated testimony for which no documentation was produced. But documentation was produced. The county consulted the United States Department of Agriculture manager for the scenic area. The record contains a letter from the manager approving the proposed revision. He says the revision will have no "significant effects upon scenic, natural, cultural or recreational resources, and that it is consistent with the Act and Management Plan." AR at 48. The record also contains a letter from a Washington State Department of Fish and Wildlife biologist who inspected the site. This expert says *139 the impact on the wildlife  mostly pika and salamanders  would be minimal, because of high quality wetland on an adjoining parcel. The biologist's opinion was contingent on the effectiveness of Stevenson's wetland protection regulations, which he did not know.
¶ 32 Ms. Duncan-Cole testified that the city had adequate regulations to assure that the wetland would be protected. The city of Stevenson assured the Commission that state and federal laws supplement city ordinances. Ms. Duncan-Cole buttressed this evidence with testimony that residential development had been planned for the land in question when it was first incorporated, but the city refused to rezone until the developer produced an acceptable plan. No plan was forthcoming, and the property was not developed.
¶ 33 Ms. Duncan-Cole described the soil as mostly "steever rock outcrop," virtually useless for agriculture. She specified the soil classifications and cited the United States Department of Agriculture Skamania County Soils map in support of her testimony. Moreover, the standard here is substantial evidence, not substantiated evidence. Oral testimony is substantial evidence, documented or not. See, e.g., Thornton Creek Legal Defense Fund v. City of Seattle, 113 Wash.App. 34, 56, 52 P.3d 522 (2002). This is so even in the face of contrary evidence. See, e.g., Wash. Cedar & Supply Co. v. Dep't of Labor & Indus., 119 Wash.App. 906, 915, 83 P.3d 1012, review denied, 152 Wash.2d 1003, 101 P.3d 866 (2004).
¶ 34 The Friends express a very important concern. Less than strict construction of the restrictions on expansion of urban areas would certainly compromise the integrity of the Act and jeopardize its noble purpose. But, of course, our holding here is, as always, limited to these specific facts.
¶ 35 The Commission's findings and order are supported by substantial evidence and we affirm the trial court's ruling to that effect.
WE CONCUR: KATO, C.J., and BROWN, J.