[No. 14748-3-II. Division Two. February 22, 1994.]

TOM TUCKER, *Appellant*, v. COLUMBIA RIVER GORGE COMMISSION, *Respondent*.

---

*Alan L. Gallagher*, for appellant.
*Lawrence C. Watters*, for respondent.

PETRICH, J.* — Tom Tucker appeals from a decision of the Skamania County Superior Court affirming a denial of his

---

*Judge John A. Petrich was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

application to subdivide real property located in the Columbia River Gorge Scenic Area. Tucker sought to subdivide four 10-acre parcels of land into eight 5-acre parcels.

In 1986, Congress passed the "Columbia River Gorge National Scenic Area Act" (Act).[1] Its purpose was

> (1) to establish a national scenic area to protect and provide for the enhancement of the scenic, cultural, recreational, and natural resources of the Columbia River Gorge; and

> (2) to protect and support the economy of the Columbia River Gorge area by encouraging growth to occur in existing urban areas and by allowing future economic development in a manner that is consistent with paragraph (1).

16 U.S.C. § 544a.[2] One central feature of the Act was the creation of the Columbia River Gorge Commission (Commission), 16 U.S.C. § 544c, to manage the lands designated as part of the Columbia River Gorge National Scenic Area (Scenic Area). 16 U.S.C. § 544b. Under the Act, the interim management guidelines required the Commission to "review all proposals for major development actions and new residential development in such county in the scenic area, except urban areas." 16 U.S.C. § 544h(c). Final interim guidelines were in effect when Tucker filed his application to divide his property, making his proposal subject to the Commission's review.[3] The Commission's mandate under

---

[1] 16 U.S.C. § 544 et seq. (1986).

[2] One of the greatest threats to the area before passage of the Act was the creation of additional subdivisions and residential housing outside of urban areas. Bowen Blair, Jr., *The Columbia River Gorge National Scenic Area: The Act, Its Genesis and Legislative History*, 17 Envtl. L. 863, 874 (1987).

[3] The Act provided for the Commission to review major development actions until the counties submit and obtain approval of their own land use regulations. 16 U.S.C. § 544h(c). In June 1987, the Secretary of Agriculture adopted interim guidelines to assist in the management of Gorge lands until the counties established regulations in accordance with the Act. 16 U.S.C. § 544h(a)(1).

In September 1992, the Commission adopted a management plan. 16 U.S.C. § 544d(c). This plan was based upon a resource inventory of the Columbia River Gorge and included guidelines for the counties' adoption of land use ordinances. 16 U.S.C. § 544e. If a county fails to submit proposed ordinances for approval, the Commission is directed to promulgate regulations for the county. 16 U.S.C. § 544e(c). At the time of Tucker's application, neither the management plan nor approved county regulations were yet in effect.

the interim guidelines was to "allow major development actions and new residential development only if it determines that such development is consistent with the standards" set forth in the Act. 16 U.S.C. § 544h(c). Proposals, such as Tucker's, to subdivide property are "major development actions". 16 U.S.C. § 544(j)(1). Pursuant to the Commission's procedural rules, the director of the Commission considered Tucker's application after the public was given notice of the proposal and an opportunity to comment. Commission rules 350-20-008, -009, -010.

Richard Benner, the executive director of the Commission, entered findings of fact and conclusions of law, and denied the application. Tucker appealed to the Commission, which conducted a de novo review of the director's decision. Commission rule 350-20-018. The Commission adopted findings of fact and conclusions of law and upheld the director's decision.[4] Tucker then appealed to the Skamania County Superior Court, as allowed by 16 U.S.C. § 544m(b)(6)(A). That court, sitting in an appellate capacity, affirmed the Commission's decision. We assume a similar role and must review the propriety of the Commission's decision. Finding no error, we affirm.

Preliminarily, we must decide what standard of review applies when reviewing the decision of a bi-state commission acting under the authority of both federal and state

---

[4]The Commission adopted the director's findings of fact and with one modification adopted his conclusions of law. The Commission substituted its conclusion as to the conversion of land for the director's. The Commission concluded: "The four subject parcels and those parcels within the southwest quarter of section 27 are in an area committed to rural residential use of a moderately low density. The proposed development does not represent a conversion of forest land."

The director had concluded: "The four subject parcels and those parcels within the southwest quarter of section 27 are in an area committed to rural residential use of a moderately low density. The proposed development does not represent a conversion of forest land. However, subsequent divisions of 10-acre parcels in the area would cumulatively increase the residential density. This cumulative increase of residential development may result in an increase of conflicts between rural residential and forest uses, which would have an adverse effect on resource lands within the vicinity."

law. The Act specifically provides that the Commission is not a federal agency or instrumentality:

> [T]he States of Oregon and Washington shall establish by way of an interstate agreement a regional agency known as the Columbia River Gorge Commission, and shall incorporate sections 544 to 544p of this title by specific reference in such agreement. The Commission shall carry out its functions and responsibilities in accordance with the provisions of the interstate agreement and of sections 544 to 544p of this title and *shall not be considered an agency or instrumentality of the United States for the purpose of any Federal law . . ..*

(Italics ours.) 16 U.S.C. § 544c(a)(1)(A). RCW 43.97.015, which incorporates the Act, specifically provides:

> The legislature of the State of Washington hereby ratifies the Columbia River Gorge Compact set forth below, and the provisions of such compact hereby are declared to be the law of this state upon such compact becoming effective as provided in Article III.

■ Clearly, the Commission is acting under authority of state law even though its authority extends beyond our state's borders by virtue of the interstate compact. Compare *Seattle Master Builders Ass'n v. Pacific Northwest Elec. Power & Conserv. Planning Coun.*, 786 F.2d 1359 (9th Cir. 1986) (interstate compacts distinguished from federal agencies; federal administrative procedure act applied pursuant to Congress' express directive), *cert. denied*, 479 U.S. 1059 (1987). *Accord Klickitat Cy. v. Columbia River Gorge Comm'n*, 770 F. Supp. 1419 (E.D. Wash. 1991) (Congress intended the Commission to adopt state law). *But see Klickitat Cy. v. State*, 71 Wn. App. 760, 767, 862 P.2d 629 (1993) (Compact is an instrument of federal law).

■■ Traditionally, review of zoning decisions has been subject to a standard under which we uphold the zoning determination "absent a clear showing of arbitrary, unreasonable, irrational or unlawful zoning action or inaction." *Bishop v. Houghton*, 69 Wn.2d 786, 792-93, 420 P.2d 368 (1966). Such arbitrary and capricious action is

> willful and unreasoning action, without consideration and in disregard of facts or circumstances . . . [W]here there is room

for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration, even though it may be otherwise felt that a different conclusion might be reached.

*Bishop*, at 794. In those cases, the court is reviewing the decision as it applies to a local zoning determination. Here, the Secretary of Agriculture created the interim guidelines, not the local government agencies, and the Commission is the ruling government body, not the local authority. Nonetheless, in our view, the interim guidelines are intended to act locally and, thus, be reviewed as is any other land use decision. Hence, our review is limited to determining whether the Commission's decision was arbitrary and capricious.

Tucker first argues that he is not bound by the final interim guidelines because the Commission is required to adopt regulations governing lot size and these regulations must be adopted in accordance with the procedures set forth in the Washington Administrative Procedure Act, RCW 34.05, before they can bind an applicant by a lot size restriction. He also alleges that the trial court abused its discretion in not allowing him to submit evidence on the lack of valid Commission regulations.

Congress anticipated the difficulty of administering a regional agency exercising authority in two legal sovereigns:

> For the purposes of providing a uniform system of laws, which, in addition to sections 544 to 544p of this title, are applicable to the Commission, the Commission shall adopt regulations relating to administrative procedure, the making of contracts, conflicts-of-interest, financial disclosure, open meetings of the Commission, advisory committees, and disclosure of information consistent with the more restrictive statutory provisions of either State. . . .

16 U.S.C. § 544c(b). The legislative "Section by Section Analysis" of the Act provides:

> The Commission must adopt a uniform set of laws relating to administrative procedure and the functioning of the Commission. In order to ensure that the Commission members are following the laws of his or her own state, the Commission is

directed to adopt the law of either Washington or Oregon, whichever is more restrictive in scope.

132 Cong. Rec. 29,502 (1986). Accordingly, the Commission adopted a set of rules for administrative procedure.[5] Tucker does not assert that the Commission violated these procedural rules. *Accord California Tahoe Regional Planning Agency v. Sahara Tahoe Corp.*, 504 F. Supp. 751, 752 (D. Nev. 1980) ("The very nature of the body, a political subdivision independent of the states that conceived it, suggests that the agency should have inherent powers to adopt policies of review that best carry out its purposes."); *People ex rel. Younger v. Tahoe Regional Planning Agency*, 516 F.2d 215, 218 (9th Cir.) ("the Compact and the TRPA are *sui generis* offsprings of a marriage between sovereign partners, each extremely reluctant to relinquish its sovereignty over a portion of its territory"), *cert. denied*, 423 U.S. 868 (1975). *But see Seattle Master Builders*, 786 F.2d at 1371 ("To the extent that the Council functions as a compact, it is considered the state-created agency of each state.").

 As to Tucker's claim, the Act specifically provides that the Commission must evaluate applications such as Tucker's under the standards and purposes contained in the Act. 16 U.S.C. § 544h(c).[6] These standards and purposes are: the context of the proposed action; its intensity; its relationship with other similar actions; proven mitigation measures; and the protection and enhancement of the scenic, cultural, recreational and natural resources of the Scenic Area. 16 U.S.C. §§ 544(a), 544a. The Commission's final order reflects its consideration of these directives in reaching its decision on Tucker's application. The Commission need not adopt and implement specific land use regulations as a prerequisite to exercising its review functions under the Act. In fact, no provision authorizes the Commission to adopt land use regu-

---

[5]The rules do not indicate whether their source is Washington or Oregon law.

[6]16 U.S.C. § 544h(c) provides, in part: "The Commission shall allow major development actions and new residential development only if it determines that such development is consistent with the standards contained in section 544d of this title and the purposes of sections 544 to 544p of this title."

lations. Rather, the Act provides that the Commission is to apply the interim guidelines, which Tucker does not claim it adopted in an unlawful manner. Here, the Commission's order reflects its proper consideration of Tucker's application. Nothing suggests that it acted in an arbitrary and capricious manner.

Tucker's claim that the trial court abused its discretion in not allowing him to submit evidence of the absence of Commission regulations fails for the same reasons. Nothing in the Act requires or allows the Commission to adopt such regulations.

Next, Tucker claims that the Commission erred in finding that the division of his property would "adversely affect" the Scenic Area. He argues that his proposal was simply a matter of drawing lines down the middle of 10-acre parcels to create 5-acre parcels. He argues that the Commission erroneously considered potential future development and the precedential effect of approving 5-acre parcels in finding that his proposal would adversely affect the Scenic Area.

To "adversely affect" the Scenic Area means "a reasonable likelihood of more than moderate adverse consequences for the scenic, cultural, recreation or natural resources of the scenic area . . .". 16 U.S.C. § 544(a). As noted below, the Commission addressed all the factors set out in the Act for determining whether the proposal would adversely affect the Scenic Area.[7]

The Commission's final order provided: "[a]llowing the proposed land division would establish a precedent for dividing the adjacent ownerships into 5-acre parcels." Tucker claims this is insufficient grounds upon which to deny a permit to subdivide, and that his application should be judged on its own merits.

---

[7]Tucker cites *Narrowsview Preserv. Ass'n v. Tacoma*, 84 Wn.2d 416, 526 P.2d 897 (1974), contending the Commission had to consider (1) the extent to which his proposed action would cause adverse environmental effects in excess of those already in the area; and (2) the proposal's quantitative adverse impact, including its cumulative harm. *Narrowsview*, 84 Wn.2d at 423. The standard applied in *Narrowsview* was a "significant" adverse effect. *Narrowsview*, 84 Wn.2d at 423. Here, it is "more than moderate adverse consequences". 16 U.S.C. § 544(a). As such, *Narrowsview* is inapplicable.

■ Cumulative effect is a justifiable reason to deny Tucker's application. In *Hayes v. Yount*, 87 Wn.2d 280, 552 P.2d 1038 (1976), the Supreme Court held that consideration of future development was permissible in determining "cumulative environmental harm". *Hayes*, at 287. The court also found no error in the Shorelines Hearings Board's consideration of the precedential effect of approving the application before it. *Hayes*, at 291.

■ Here, the Commission's decision is factually similar to the Board's decision in *Hayes*. The Commission's unchallenged findings of fact evidence its concerns about the precedent of allowing 5-acre plats and show that Tucker's proposed use was not compatible with the existing rural residential low density population. Absent an assignment of error to a finding of fact of an administrative agency, that finding is a verity on appeal. *Shoreline Comm'ty College Dist. 7 v. Employment Sec. Dep't*, 120 Wn.2d 394, 842 P.2d 938 (1992); *Fuller v. Department of Empl. Sec.*, 52 Wn. App. 603, 606, 762 P.2d 367 (1988), *review denied*, 113 Wn.2d 1005 (1989). *Accord Murray v. Columbia River Gorge Comm'n*, 125 Or. App. 444, 865 P.2d 1319 (1993); *Miller v. Columbia River Gorge Comm'n*, 118 Or. App. 553, 848 P.2d 629 (1993) (substantial evidence supports the Commission's decision and it properly applied the law). As noted below, the Commission's determination that Tucker's proposal would "adversely affect" the Scenic Area is supported by its findings and, as such, there is nothing to indicate it acted in an arbitrary and capricious manner.

Next, Tucker claims that the Commission's decision was not a detailed order as required by RCW 34.05.461. He claims that the Commission's order, which was essentially an adoption of the director's decision, did not address the appropriateness of treating the properties separately; the appropriateness of considering each property in relation to the property surrounding it; the reasonableness of the lot size; the special characteristics of each property; the precise visual setting of each property; and the nature and use of the properties.

The Commission's order sufficiently demonstrates its consideration of the factors outlined in the Act for determining

whether a proposal would "adversely affect" the Scenic Area, and it provides factual support for each consideration. *See* 16 U.S.C. §§ 544-544p (Commission must consider the context, the intensity, the relationship between the proposed action and similar actions which are individually insignificant, but which have cumulative significant impact, and the proven mitigation measures). The Commission found the parcels were in a "key viewing area" as defined in the final interim guidelines (context); the proposed change would result in an increase in density in an area where 92 percent of the surrounding lots were 10 acres or more, with an average size of 7.5 acres (intensity); and, considered with other similar actions, would have a cumulative significant impact. The Commission's order properly sets out the facts which formed the basis for its decision.

■■ Tucker raises several additional issues that we do not address. He argues that the Commission placed a moratorium on Gorge development; failed to consider mitigation possibilities; did not consider the protection and enhancement of the Gorge economy; violated his vested rights; and made a regulatory taking in denying his application. Tucker either fails to support these claims with legal argument or authority, or fails to demonstrate they were previously considered by the agency below. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986); *Puget Sound Plywood, Inc. v. Mester*, 86 Wn.2d 135, 142, 542 P.2d 756 (1975); *Meyers v. Newport Consol. Joint Sch. Dist. 56-415*, 31 Wn. App. 145, 155, 639 P.2d 853, *review denied*, 97 Wn.2d 1018 (1982); RAP 10.3(a)(5).

Judgment affirmed.

MORGAN, C.J., and ALEXANDER, J., concur.