**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

April 4, 2023

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| JUDITH ZIMMERLY, JERRY NUTTER, and NUTTER CORPORATION, | No. 56417-3-II |
| Petitioners, | |
| v. | |
| COLUMBIA RIVER GORGE COMMISSION, | PUBLISHED OPINION |
| Respondent, | |
| and | |
| FRIENDS OF THE COLUMBIA GORGE, JODY AKERS, PAUL AKERS, DANNY GAUDREN, KATHEE GAUDREN, RACHEL GRICE, ZACHARY GRICE, GREG MISARTI, EDMOND MURRELL, KIMBERLY MURRELL, RICHARD J. ROSS, KAREN STREETER, SEAN STREETER, and ELEANOR WARREN, CLARK COUNTY, | |
| Interested Parties. | |

GLASGOW, C.J.— Judith Zimmerly's family started operating a surface mine in the Columbia River Gorge in 1972, then halted operations in the 1980s. In 1986, the area became part of the Columbia River Gorge Scenic Area, and federal guidelines required the Columbia River

No. 56417-3-II

Gorge Commission to revisit all mining authorizations in the scenic area to ensure their continued operation was consistent with the federal law governing the scenic area.

In 1993, the Commission approved Zimmerly's application to both resume and expand mining gravel on the site in a Commission director's decision. The director's decision stated that the authorization would become void if the development was discontinued for any reason for one continuous year or more. Mining started and stopped again several times, and no mining occurred at the site for at least 10 years between 2005 and 2015.

In 2017, Jerry Nutter started leasing Zimmerly's property and resumed mining. In 2018, Clark County began a code enforcement action against Zimmerly and Nutter for operating the mine without a scenic area authorization, reasoning that periods of disuse had voided the 1993 director's decision. Zimmerly and Nutter appealed.

The county hearing examiner held a hearing and concluded that under a provision in the Clark County Code, which had not been adopted at the time of the 1993 director's decision, Zimmerly and Nutter could continue mining despite the lack of a scenic area authorization. The hearing examiner did not apply the discontinuance language in the Commission director's decision or another provision in the Clark County Code regarding discontinued uses.

A group of the mine's neighbors and the Friends of the Columbia Gorge appealed to the Commission. Zimmerly and Nutter both moved to dismiss the appeal for lack of jurisdiction. The Commission denied the motion to dismiss. Zimmerly and Nutter sought interlocutory review at the superior court.

In the meantime, the Commission reversed the hearing examiner's decision on the merits and ruled that mining was not permitted on the property because mining had been discontinued for

2

No. 56417-3-II

more than one year, triggering both a Clark County Code provision regarding discontinued uses in the scenic area and the voiding provision of the director's decision. Thus, Zimmerly and Nutter would need to apply for a new scenic area authorization from the county to continue mining.

Zimmerly and Nutter appealed the Commission's final order. The superior court consolidated the appeal of the final order and the interlocutory review on jurisdiction and affirmed the Commission's rulings.

Zimmerly and Nutter appeal. They argue the Commission lacked jurisdiction, followed an improper procedure, misapplied the law on the merits, and violated the appearance of fairness. We affirm.

FACTS

I. BACKGROUND

In 1972, Zimmerly's family opened a mine on roughly 35 acres of a property in the Columbia River Gorge to supply gravel for a local highway project. Only a reclamation permit and bond with the Department of Natural Resources was required to conduct surface mining on the property at the time. The mine was intermittently inactive in the mid-1980s, when local demand subsided, and mining eventually stopped.

A. History and Duties of the Commission

In 1986, Congress designated the Columbia River Gorge a national scenic area under the Columbia River Gorge National Scenic Area Act, 16 U.S.C. § 544b(a)(1). The federal Act split the scenic area into urban areas, general management areas, and special management areas. 16 U.S.C. § 544b. The Act generally avoids regulating in urban areas. In contrast, the Act significantly limits development in special management areas and provides some restrictions for the general

3

No. 56417-3-II

management areas. *See* 16 U.S.C. § 544d. The Act's purpose is "to protect and provide for the enhancement of the scenic, cultural, recreational, and natural resources of the Columbia River Gorge" while encouraging growth "in existing urban areas." 16 U.S.C. § 544a(1), (2). The Zimmerly land is within the general management area.

The Act also authorized Oregon and Washington to establish the Commission through an interstate compact. 16 U.S.C. § 544c(a). In 1987, Washington enacted the Columbia River Gorge Compact as a state statute, chapter 43.97 RCW, establishing the Commission as "a regional agency" with authority under state law. RCW 43.97.015 art. I(a).

### 1.    Commission powers under the Compact

The Compact gives the Commission broad authority. If a county fails to enact a land use ordinance that complies with requirements in the Act, the Commission can enact a land use ordinance for the county. RCW 43.97.015 art. I(a)(3). The Compact also authorizes the Commission to review proposals for major development actions in the scenic area, which the Commission may reject if it "finds the development is inconsistent with the purposes of [the Act]." RCW 43.97.015 art. I(a)(4). Significantly, the Compact also incorporates the federal Act by reference and grants the Commission "the power and authority to perform all functions and responsibilities in accordance with the provisions of this compact and [the Act]." RCW 43.97.015 art. I(a).

### 2.    Commission powers under the Act

The Act provides more detail about the Commission's responsibilities. The Act gives the Commission authority to adjudicate appeals from "[a]ny person or entity adversely affected by any

4

No. 56417-3-II

final action or order of a county *relating to the implementation* of [the Act]." 16 U.S.C. § 544m(a)(2) (emphasis added).

The Act states that the Commission must adopt a management plan setting standards for land use within the scenic area that prevent land uses and development from "adversely affecting the scenic, cultural, recreation[,] and natural resources of the scenic area." 16 U.S.C. § 544d(d)(9). The Commission must then review land use ordinances from counties within the scenic area for compliance with the management plan. 16 U.S.C. § 544e(b). If a county's ordinance is inconsistent with the Commission's management plan, the Commission can reject the ordinance and suggest modifications. 16 U.S.C. § 544e(b)(3). If the county fails to correct the ordinance, the Commission must publish its own ordinance controlling land uses within the scenic area, except for federal lands and urban areas. 16 U.S.C. § 544e(c)(1).

The federal Act acknowledged that counties would need time to draft their ordinances. Until counties enacted their scenic area ordinances, the Act instructed the Commission to review development and land use proposals for nonurban areas in that county's part of the scenic area. 16 U.S.C. § 544h(c). The Commission could allow a land use or development during this time "only if it determine[d] that such development [was] consistent with" the Act's standards and purposes. *Id.* The Act also directed the Secretary of Agriculture and the U.S. Forest Service to "develop interim guidelines for the scenic area . . . to identify land use activities which are inconsistent with [the Act]" while the counties drafted their scenic area ordinances. 16 U.S.C. § 544h(a)(1).

The Secretary's interim guidelines, adopted in 1987, were the controlling authority for determining a proposed use or development's consistency with the Act until counties enacted their scenic area ordinances. *Id.* The interim guidelines applied to most new land uses outside of urban

No. 56417-3-II

areas, as well as certain *existing* uses including "the development of sand, gravel or crushed rock," the type of mining at issue here. FOREST SERV.,U.S. DEP'T OF AGRIC., COLUMBIA RIVER GORGE NAT'L SCENIC AREA FINAL INTERIM GUIDELINES ch. III(A)(2)(a) (1987) (INTERIM GUIDELINES) [https://perma.cc/5983-RDGK].

For the enumerated existing uses, including surface mining, the Commission had to conduct a "consistency determination" to assess compliance with the Act. INTERIM GUIDELINES, ch. III(A)(2). If an existing use was found inconsistent with the Act, the landowner was not allowed to develop or continue operating. INTERIM GUIDELINES ch. II(A), (B). Clark County did not adopt its scenic area ordinances until 1996, so these interim guidelines and authority applied between 1987 and 1996. *See* Clerk's Papers (CP) at 26.

The interim guidelines had a section that applied to *all* land uses reviewed under the guidelines. INTERIM GUIDELINES ch. II(A). One universal guideline provided, "When a use or development is discontinued for more than one year, its replacement shall be subject to a consistency determination" to check compliance with the Act and federal guidelines. INTERIM GUIDELINES ch. III(A)(6). Another stated that uses approved under the guidelines "remain subject to all applicable federal, state, and local laws, regulations, and requirements." INTERIM GUIDELINES ch. III(A)(4).

The Commission's director was responsible for approving development actions using the interim guidelines. The Commission's rules stated that the director's decision "approving a proposed development action shall become void (a) in two years if the development action is not undertaken within that period, or (b) when the development action is discontinued for any reason for one continuous year or more." 2 Admin. R. (AR) at 430.

6

No. 56417-3-II

B.        Approval of the Zimmerly Mine and Subsequent History

The Commission's director reviewed development and performed consistency reviews of preexisting uses in Clark County's portion of the scenic area, applying the interim guidelines, from roughly 1987 until 1996. The Commission adopted its first management plan in 1991.

In 1993, after several years of no mining, Zimmerly applied to resume and expand mining on her land from 35 acres to 67 acres. The application explained that due to a resurgence in demand, she wanted "*to resume the mining activity* commenced in 1972" "with greater scope of operation than in recent years." 2 AR at 1009-10 (emphasis added). This request was consistent with the requirement that mining activities be subjected to consistency review to ensure they were in compliance with the Act. INTERIM GUIDELINES ch. III(A)(4). Because Clark County had not yet adopted its scenic area ordinance, the Commission reviewed Zimmerly's application to resume and expand surface mining under the interim guidelines as required by the federal Act.

The Commission approved the application under the interim guidelines in a director's decision. The director's decision approved continued operation and expansion of mining operations on Zimmerly's property. Consistent with the Commission's rules and the interim guidelines, the director's decision stated that it "shall become void in two years if the development action is not undertaken within that period, or when the development action is discontinued for any reason for one continuous year or more." 2 AR at 1003. It also provided that "[t]he development remains subject to the rules and regulations of other state and local authorities with jurisdiction over the proposed development." *Id.*

7

No. 56417-3-II

In 1996, the Commission discovered that Zimmerly had not complied with several requirements of the 1993 director's decision. The Commission pursued violation proceedings under its own rules and the Act. Zimmerly paid several fines and agreed to conditions in a consent decree in 1997. The consent decree stated that it "shall not be interpreted to constitute a permit, or a modification of existing permits." 2 AR at 878. But the consent decree included an agreement that Zimmerly and her successors would comply with all provisions of the federal Act, the management plan, and any order from the Commission or the County that regulates development on the parcel.

In 1997, Zimmerly leased the property for a 20-year term to a cement company. The surface mine was largely dormant during the lease period. The Department of Natural Resources inspected the site every year or two to determine if it needed to increase the bond for the reclamation permit. Inspection reports stated that the "site ha[d] remained dormant for some time" in 2008, "was not operating and appear[ed] to have not been operating for some time" in 2011, and that "it ha[d] been some time since the last mining campaign" in 2015. 2 AR at 765, 814, 818.

There are other records related to activity at the mine. Inspection reports from the Department of Ecology state that the site was "currently inactive" in 2005 and "not being actively mined" in 2009. 2 AR at 469, 476. The Department of Ecology defines "inactive" as "no activity or only removal of material from existing stockpiles." 2 AR at 473. The utility company serving the site also disconnected power to the site "sometime between 1998 [and] 2003" because the mine "was all but abandoned and unsupervised." 2 AR at 479, 485. As of 2017, the last recorded power usage at the site was in November 2004. However, excise tax returns show that Zimmerly earned income and paid business and occupation taxes between 2011 and 2016.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

## II. HEARING EXAMINER PROCEEDINGS AND THE COUNTY CODE

A.      Preliminary Proceedings and Arguments

The Commission approved Clark County's scenic area ordinance for the first time in 1996. Clark County's scenic area code states that the production of mineral resources may occur in the scenic area only if approved under the county code "and all other applicable federal, state[,] and county standards." CLARK COUNTY CODE (CCC) 40.240.440(H). The code defines the production of mineral resources as "the process of surface, underground, or submerged mining of mineral resources," including "the use of portable crushing, on-site stockpiling, washing, milling, screening, or sorting equipment or other similar methods of initial treatment of a mineral resource and transport to another site for use or further processing." CCC 40.240.040.[1]

Nutter began leasing the Zimmerly mine in 2017 and resumed mining. In 2018, Clark County investigated the mine and notified Zimmerly and Nutter that they were violating the county code by operating without a county permit or other authoirzation for mining within the scenic area. The notice included a stop work order directing Zimmerly and Nutter to stop all mining activities until they obtained a required scenic area authorization.

Zimmerly and Nutter appealed to the county hearing examiner, who held two hearings in the summer of 2018. The Neighbors and the Friends sought to participate as amici.

Several neighbors submitted declarations attesting to a lack of activity at the mine for a long time before Nutter resumed operations in late 2017. Some who had lived in the area since the 1990s recalled mining activity in the late 1990s that stopped and did not resume until 2017. Others

---

[1] We cite to the current version of the county code because the relevant language has not changed since the code enforcement proceeding began.

No. 56417-3-II

who had moved to the area in the 2000s had no recollection of seeing or hearing any mining activity at the site before 2017.

Zimmerly argued that official documents from Clark County had identified the mine as active in 2004 and 2010. In response, the County acknowledged that although the county code required it to periodically inspect mining facilities every few years, the County had not been inspecting the mine.

The hearing examiner issued a written ruling in August 2018. The hearing examiner declined to consider the Friends and Neighbors' amicus brief but accepted the declarations from neighbors "regarding their observations of past mining activities on the Property." 1 AR at 348.

B.      Hearing Examiner Findings

The hearing examiner made numerous findings about periods of activity at the mine before the 1997 consent decree. The hearing examiner found "[s]urface mining operations were legally established on the Property in 1972." 1 AR at 356. The hearing examiner found "no [Department of Natural Resources] reports or other evidence in the record regarding the extent of mining activities between 1974 and 1983." 1 AR at 349. "Gravel was extracted, processed, and stockpiled on the Property in 1984" and stockpiled gravel "was sold to buyers in subsequent years, but "[n]o additional extraction occurred" until early 1993. *Id.* The hearing examiner found that mining occurred consistently from 1993 to 2001, and then found pauses in mining of several months at a time between 2003 and 2004.

The hearing examiner found that Clark County identified the site as an "'active'" or "'existing'" mine in 2010 and 2013. 1 AR at 351. But the hearing examiner found a large gap in activity when the property was leased to the cement company. The hearing examiner found, "No

10

No. 56417-3-II

mining or other activities occurred on the Property between 2005 and 2015. Aggregate stockpiles remained on the Property. However, the stockpiles and disturbed areas had revegetated with voluntary trees and grasses." 1 AR at 350 (internal footnote omitted). The hearing examiner found that revegetation had not occurred on 50 percent of the property.

The hearing examiner also found that in 2012, the cement company "proposed to bid on fill jobs utilizing material from the Property" but "no material was extracted from the Property during this period." *Id*. In 2013, the company "imported roughly 54,000 yards of fill material to the Property for potential use in reclamation. However[,] Ms. Zimmerly denied [the company's] proposal to utilize this material for reclamation and ordered [the company] to remove it." *Id.* The hearing examiner found that mining briefly resumed in July 2015, then halted until the fall of 2017.

C.      Clark County Code Provisions Regarding Changes to Existing Uses

The Commission approved and the County adopted a scenic area code three years *after* the Commission approved Zimmerly's 1993 application and issued the director's decision.

The scenic area code had provisions discussing when changes to or discontinuance of a use required the user to apply for a new permit. Former CCC 40.240.170(D)(4) (2006)[2] addressed changes to existing production of mineral resources:

> In the [general management area], existing development or production of mineral resources may continue unless the Gorge Commission determines that the uses adversely affect the scenic, cultural, natural or recreation resources of the Scenic Area. These uses will be considered discontinued and subject to this chapter if any of the following conditions exist:
> (a) The mined land has been reclaimed naturally or artificially to a point where it is revegetated to fifty percent (50%) of its original cover . . . or has reverted to another beneficial use, such as grazing. Mined land shall not include terrain which was merely leveled or cleared of vegetation.
> (b) The site has not maintained a required state permit.

---

[2] Clark County repealed subsection (D)(4) in 2021. Clark County Ordinance 2021-12-02 § 16.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

          (c) The site has not operated legally within five (5) years before the date of adoption of the Management Plan.

Re-establishing a discontinued use requires the use to comply with the Commission's management plan and the issuance of a new authorization under the county scenic code. CCC 40.240.170(F).

        The scenic area code had another provision addressing discontinued uses:

          Except as provided in Section 40.240.170(C) [regarding replacement of existing structures that were destroyed by natural disasters], any use or structure that is discontinued for one (1) year or more shall not be considered an existing use or structure. Proof of intent to abandon is not required to determine that an existing use or use of an existing structure has been discontinued.

CCC 40.240.170(E). A use that met the standard of subsection (E) would also require a new authorization under the scenic area code to resume operating. CCC 40.240.170(F).

        The scenic area code provided that a landowner who wanted the benefit of the newer, less stringent regulations could apply "to alter conditions of approval for an existing use or structure approved under prior Scenic Area regulations" such as the interim guidelines. Former CCC 40.240.160 (2006). The new decision would "supersede[] the original decision." Former CCC 40.240.160(E). There is no evidence that Zimmerly ever applied to alter the conditions of authorization for the mine.

D.      Hearing Examiner Conclusions

        Even though the Commission issued the director's decision before Clark County adopted its scenic area code, the hearing examiner applied the scenic area code to determine whether Zimmerly had a valid authorization for surface mining in 2018. The hearing examiner concluded that the provision about changes to use for existing mineral production, subsection D(4), applied to the mine, while the provision stating that a use would be discounted after one year of no activity, subsection E, was "inapplicable." 1 AR at 355. The hearing examiner reasoned that subsection

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

D(4) recognized surface mining operations would fluctuate over time, and applying subsection E would undermine that accommodation.

The hearing examiner then concluded that use of the mine had not changed enough to meet the criteria for finding the use discontinued under former CCC 40.240.170(D)(4). The hearing examiner ruled that Zimmerly and Nutter were allowed to continue surface mining at the site under the county scenic area code.

The hearing examiner declined to rule on whether the discontinuance term in the director's decision was applicable, asserting that "[t]he examiner's jurisdiction is limited to the application of the County Code. . . . The Gorge Commission has its own independent authority to enforce its regulations if it determines that the 1993 approval expired." 1 AR at 357. The hearing examiner dismissed most of the code enforcement proceeding against Zimmerly and Nutter.[3]

### III. COMMISSION PROCEEDINGS

A.      Motion to Dismiss and Stay

The Friends and the Neighbors each appealed the hearing examiner's final order. The Commission consolidated the appeals.

Zimmerly moved to dismiss the appeal for lack of Commission jurisdiction, in addition to other arguments. Although the Act gave the Commission jurisdiction over "any final action or order of a county relating to the implementation of [the Act]," Zimmerly argued that Clark County's code enforcement proceeding was not related to the "implementation of the Act" and was outside the Commission's jurisdiction. 16 U.S.C. § 544m(a)(2); 1 AR at 546. Zimmerly

---

[3] The hearing examiner found that Zimmerly and Nutter violated the county code "by conducting rock crushing activities on the Property without a conditional use permit." 1 AR at 358. They did not appeal this aspect of the decision.

No. 56417-3-II

contended that an appeal to superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW, was the sole mechanism for reviewing the hearing examiner's decision. Nutter joined this motion.

After a hearing, the Commission orally denied the motions to dismiss. It explained that it would issue a separate written decision with its rationale. Zimmerly and Nutter moved for reconsideration, which the Commission denied.

Zimmerly and Nutter then petitioned for interlocutory review on the jurisdiction issue. As a result, attorneys for Clark County, the Friends, the Neighbors, and the Commission discussed entering a joint defense agreement allowing them to share certain privileged information related to the jurisdiction issue. The parties also intended "to make clear that [the attorneys were] not having protected discussion" or ex parte communications about the merits of the appeals before the Commission. CP at 1037. The agreement specified that the parties' attorneys were sharing protected information about the interlocutory appeal to superior court, but not "the two pending appeals before the Gorge Commission." CP at 1043. The County did not ultimately join the agreement.

Zimmerly moved for the superior court to stay the Commission's proceedings based on lack of jurisdiction. The superior court denied the motion for a stay.

B.    Merits Arguments

Before the Commission, the Friends assigned error to the hearing examiner's refusal to rule on the validity of the 1993 director's decision and the conclusion that the county scenic area code authorized continued mining on the property. The Friends believed the 1993 director's decision was "the operative land use decision for mining" on the property and its discontinuance provision

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

could not be ignored. 1 AR at 323. Because the hearing examiner had found "'[n]o mining or other activities'" occurred on the property from 2005 to 2015, which was corroborated by utility records and inspection records from several agencies, the Friends argued the director's decision was void due to its one-year discontinuance provision. 1 AR at 315.

Zimmerly responded that the county scenic area ordinances controlled instead of the director's decision because the Commission approved the ordinance more recently. And she believed the mine was "a lawful nonconforming use" under the county code. 1 AR at 199. Zimmerly also argued that the Commission could not properly analyze the 1993 director's decision on appeal because the hearing examiner had declined to rule on the validity of the director's decision. Instead, she believed the Commission would have to launch an investigation and serve its own notice of violation.

C.      Commission Staff Report

A staff report reminded the Commission members that they were expected to "disclose any conflicts of interest, bias, prejudgment and appearance of fairness concerns toward or against the project or any party" at the beginning of the hearing. 1 AR at 117. The report listed several general disclosures of conflicts "involving the full Commission" and invited the members to recuse if they believed they could not be impartial. 1 AR at 118. The list did not include the joint defense agreement.

D.      Commission Ruling

The Commission issued its final order in October 2019. The order explained that it was both an order on the merits and the order explaining the reasoning of the denial of the motion to dismiss for lack of jurisdiction.

15

No. 56417-3-II

The Commission ruled that it had jurisdiction over the code enforcement appeals. It emphasized that the Washington Supreme Court considered the Commission's jurisdiction to include "'final appellate authority over all final county decisions'" related to the scenic area. 1 AR at 20 (quoting *Skamania County v. Columbia River Gorge Comm'n,* 144 Wn.2d 30, 50, 26 P.3d 241 (2001)). Further, because the code enforcement proceeding alleged a violation of the scenic area code, "the administrative proceeding at issue here specifically involves the implementation of the National Scenic Area Act." 1 AR at 23. Thus, the Commission concluded that it had jurisdiction to hear the appeals. And it reasoned that LUPA did not divest it of jurisdiction "[b]ecause LUPA doesn't apply to decisions that are subject to review by a quasi-judicial body created by state law, [so] it similarly cannot apply to decisions that are subject to review by a quasi-judicial body created by <u>federal and</u> state law." 1 AR at 21. The Commission concluded it had the authority to assess whether the mine could continue operating under either the director's decision or the county scenic area code.

1.    Review of 1993 director's decision

The Commission reversed as arbitrary and capricious the finding that the hearing examiner lacked jurisdiction to review the 1993 director's decision. The hearing examiner's holding was inconsistent with other findings and rulings in the order and listed several instances of the hearing examiner relying on the director's decision throughout his ruling. The Commission stated that the hearing examiner "could not conclude that the 1993 Development Review decision permitted gravel pit operations in 2018 without also determining whether the 1993 decision was still valid." 1 AR at 38. To do so "was willful and unreasoning." *Id.*

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

The Commission did not remand for the hearing examiner to make additional findings about the director's decision, however. This was because the uncontested findings about gaps in mining activity could "only allow for a single legal conclusion" that periods of disuse had rendered the authorization for mining in the director's decision invalid. 1 AR at 40.

The Commission relied on the language in the 1993 director's decision stating that the authorization for mining at the site would become void if the development action was discontinued for one continuous year. The Commission explained that Zimmerly had to obtain the director's approval because there was a specific requirement that sand and gravel operations be reviewed to ensure compliance with the Gorge management plan. The Commission emphasized two of the hearing examiner's uncontested findings: that no mining or other activities occurred between 2005 and 2015 while the stockpiles and disturbed areas revegetated during that time, and that no mining occurred between August 2015 and January 2017. No party had assigned error to the findings, so the Commission was bound by them. Because the hearing examiner found no activity at the mine for at least two time periods that each exceeded one year, the Commission concluded that the director's decision was void and surface mining was no longer permitted at the site until Zimmerly obtained a new permit. Although neither party contested the finding that there was no activity at the mine from 2005 to 2015, the Commission also recited evidence from the record supporting that finding.

2.     Review of county scenic area code

The Commission ruled that it did not need to address the county scenic area code further, as the 1993 director's decision controlled because it predated the code by several years, and it was the governing authorization. Nevertheless, the Commission also concluded that under subsection

17

No. 56417-3-II

E of CCC 40.240.170, mining and other activities were discontinued for more than one year, so surface mining was not authorized under the scenic area code. The Commission reversed the order dismissing the code violation. The ruling reinstated the stop-work order issued by the county that prohibited Zimmerly and Nutter from mining until they obtained a valid scenic area authorization.

## IV. CONSOLIDATED APPEAL TO SUPERIOR COURT

In November 2019, Zimmerly and Nutter appealed the Commission's final order to the Clark County Superior Court. The superior court consolidated the appeal of the final order with the interlocutory appeal on the Commission's jurisdiction.

That same month, Clark County disclosed the joint defense agreement in response to a public records request from Zimmerly's attorneys. In January 2020, Zimmerly's counsel then sent a public records request to the Commission seeking any communications between the Commission and the Friends or Neighbors. In response, in February 2020, the Commission disclosed a copy of the joint defense agreement, preliminary e-mails discussing the agreement, and e-mails confirming that Clark County did not participate in the agreement. Zimmerly and Nutter filed their opening brief to the superior court in March 2020.

In May 2020, Zimmerly and Nutter filed their reply brief to superior court. For the first time in their reply, Zimmerly and Nutter argued that the Commission had violated the appearance of fairness doctrine by participating in the joint defense agreement during the interlocutory appeal of the motion to dismiss.

The superior court found that Zimmerly and Nutter's appearance of fairness claims were untimely because they were not raised until the reply. The superior court affirmed the Commission's final order in full. Zimmerly and Nutter appeal.

18

No. 56417-3-II

ANALYSIS

The federal Act does not provide specific standards for reviewing the Commission's actions, but the parties agree that Washington courts have, as a matter of Washington common law, reviewed the Commission's acts under the standards in Washington's Administrative Procedure Act (APA), chapter 34.05 RCW. *See Friends of Columbia Gorge, Inc. v. Columbia River Gorge Comm'n*, 126 Wn. App. 363, 369-70, 108 P.3d 134 (2005) (reviewing a Commission order under the APA). The APA provides that this court will grant relief from an agency's adjudicative order when an order was outside the agency's jurisdiction, the agency engaged in an unlawful procedure, the agency erroneously interpreted or applied the law, the order was not supported by substantial evidence, or the order was arbitrary and capricious. RCW 34.05.570(3)(b)-(e), (i).

The legislature adopted the interstate compact that created the Commission as a "regional agency," RCW 43.97.015 art. I(a), and we treat the Commission as a state agency for purposes of judicial review of Commission decisions. Consistent with the APA, we review the Commission's decision, not the hearing examiner's, and we sit in the same position as the superior court. *Campbell v. Employment Sec. Dep't*, 180 Wn.2d 566, 571, 326 P.3d 713 (2014).

The burden of establishing the invalidity of the Commission's action is on Zimmerly and Nutter. *See* RCW 34.05.570(1)(a). "We review questions of law and an agency's application of the law to the facts de novo, but we give the agency's interpretation of the law great weight where the statute is within the agency's special expertise." *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015). We review allegations that an agency's order is not supported by substantial evidence by examining whether there is "'a sufficient quantity of evidence to persuade

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

a fair-minded person of the truth or correctness of the order.'" *Thurston County v. W. Wash. Growth Mgmt. Hr's Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008) (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. H'gs Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998)).

An agency acts in an arbitrary and capricious manner when its action is "'willful and unreasoning'" and does not consider surrounding facts or circumstances. *Tucker v. Columbia River Gorge Comm'n*, 73 Wn. App. 74, 78, 867 P.2d 686 (1994) (quoting *Bishop v. Town of Houghton*, 69 Wn.2d 786, 794, 420 P.2d 368 (1966)). The mere fact that there is room for two opinions will not render an action arbitrary and capricious. *Id*. at 78-79.

## I. COMMISSION JURISDICTION

### A.     LUPA

As a preliminary matter, Zimmerly and Nutter contend that LUPA "is the exclusive means for judicial review of all Washington state land use decisions, including this one." Opening. Br. of Appellants at 8, n.3. The Clark County Code generally allows parties aggrieved by code enforcement proceedings to appeal to a hearings examiner, and the hearing examiner's decision may be appealed "pursuant to [LUPA] in Clark County superior court." CCC 32.08.040(1); Former CCC 32.08.050(2) (2018).

LUPA "shall be the exclusive means of judicial review of land use decisions," with exceptions such as "[l]and use decisions of a local jurisdiction that are subject to review by a quasi-judicial body created by state law, such as the shorelines hearings board or the growth management hearings board." RCW 36.70C.030(1)(a)(ii). The Commission was created by a mixture of state and federal legislation: the Compact and the Act. The legislature adopted the Compact as a state statute. RCW 43.97.015. And this court has held that the Commission acts "under authority of

20

No. 56417-3-II

state law even though its authority extends beyond our state's borders by virtue of the interstate compact." *Tucker*, 73 Wn. App. at 78. Thus, we hold that land use decisions within the Commission's jurisdiction fit within the exception to LUPA's requirements.

B.      Language of the Act and County Code

The parties agree that the Act allows an aggrieved person to appeal to the Commission from "any final action or order of a county relating to the implementation of [the Act]." 16 U.S.C. § 544m(a)(2). Zimmerly and Nutter do not contest that the Friends and Neighbors were adversely affected by the hearing examiner's order and the hearing examiner's decision was a final county action. They dispute only whether the order related to the implementation of the Act. Zimmerly and Nutter argue the Commission lacked jurisdiction to hear the appeal of the hearing examiner's order because the underlying county ordinances do not implement the Act.

1.      Chapter 32.08 CCC

First, Zimmerly and Nutter contend that the county's land use code, chapter 32.08, cannot be read to implement the Act. We disagree. Chapter 32.08 CCC sets out Clark County's procedure for enforcing its land use and public health ordinances, including the scenic area code. CCC 32.08.010(1). The issues before the Commission related to the application of the scenic area code and a Commission authorization to operate surface mining activities, not the County's procedure for enforcing its own ordinances. Thus, we reject Zimmerly and Nutter's argument that application of chapter 32.08 CCC somehow divests the Commission of jurisdiction.

21

No. 56417-3-II

2.    Chapter 40.240 CCC

Zimmerly and Nutter contend that Clark County's scenic area code, chapter 40.240 CCC, also does not implement the Act but instead relates to administration or enforcement of the Act. Because Congress did not state that county land use ordinances are "implementation measures," 16 U.S.C. § 544l, Zimmerly and Nutter assert the Commission does not have the power to review proceedings under the county scenic area code. We disagree.

The Act unambiguously directed the Commission to draft and adopt a management plan that then set the standards for the Commission to apply to approve county scenic area land use ordinances. 16 U.S.C. § 544d(a)-(e), 544e(b). The County's scenic area code states that the code is "intended to be consistent with and implement the [Commission's] Management Plan." CCC 40.240.010.[4] And "[t]he Management Plan shall be applied consistent with and in the spirit of the [Act]." CCC 40.240.010(C)(1). The County began its enforcement action against Zimmerly and Nutter under CCC 40.240.010(B), which prohibits land uses in the scenic area that have not been approved pursuant to the scenic area code. This question relates to implementation of the Act.

The Commission's internal rules also contain a broad description of the Commission's jurisdiction, stating that the "Act authorizes appeals to the Gorge Commission by a person or entity adversely affected by a final action or order of a county." 1 AR at 440.

Although nothing in the Act specifically identifies county scenic area ordinances as "related to implementation of the Act," the relationship between the Act and the county code is plain. The Act requires that the Commission determine whether a county's code is consistent with

---

[4] We cite to the current version of the county code because the relevant language has not changed since the code enforcement proceeding began.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

the Act and the management plan adopted under the Act. 16 U.S.C.§ 544d(d), 544e(b)(3). This case involves an appeal to the Commission from a "final action or order of a county relating to the implementation of [the Act]." 16 U.S.C. § 544m(a)(2). In sum, under the Act, the Commission has jurisdiction to hear an appeal of a county's enforcement of its scenic area code and the Commission did not exceed its jurisdiction by hearing this appeal.

II. MERITS OF THE COMMISSION'S RULING

Zimmerly and Nutter argue that the Commission exceeded its authority, failed to follow proper procedures, and erroneously interpreted or applied the law by ruling that under the Commission's 1993 director's decision provisions, long periods of no mining activity rendered the 1993 authorization void. They argue the Commission committed the same errors by concluding that the authority to surface mine was discontinued under the county code.

A.      Whether the Director's Decision or County Scenic Area Code Controls

Zimmerly and Nutter contend that the Commission's decision to rely on the director's decision over the county scenic area code was "wrong on the law and exceeds the bounds of the Commission's appellate authority." Opening Br. of Appellants at 30. Because there is no explicit requirement in the county code for "a mine to have or maintain a Commission permit," Zimmerly and Nutter reason that the Commission cannot insist on compliance with the 1993 director's decision "as a requirement for continued use." Opening Br. of Appellants at 30, 31. Zimmerly and Nutter emphasize that neither the management plan nor the director's decision purport to "nullif[y] any contrary county code." Opening Br. of Appellants at 33.

The Commission argues that the surface mine was operating under the Commission's 1993 authorization, and the later-adopted county code cannot retroactively apply because the code itself

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56417-3-II

requires an application to alter the terms of a prior authorization such as the director's decision. Zimmerly has not applied to alter the terms of the director's decision, even though she could have under the code. *See* CCC 40.240.160. We agree with the Commission.

Clark County initially investigated Nutter's resumed mining at the Zimmerly mine because the County did not believe that there was a valid scenic area authorization to mine at the site under the County's scenic area code. The initial code enforcement proceeding charged Zimmerly and Nutter with violating CCC 40.240.010(B), which requires a land use within the scenic area to comply with the scenic area code, the scenic area management plan, and, by extension, the Act. CCC 40.240.010 (preface expressing the purpose that the code be consistent with the management plan and the Act),.(C)(1) (requiring county application of the management plan consistent with the Act).

To the extent that Zimmerly and Nutter argue that the director's decision was outside the scope of the Commission's review of the county's code enforcement action, we disagree. The county scenic area code requires that land use within the scenic area comply with the Act. *See* CCC 40.240.010, (C)(1).

The 1993 director's decision achieved compliance with the Act—and the interim guidelines adopted as required by the Act—and it conditioned its approval on a requirement that mining activity not cease for more than one continuous year. A code enforcement action on the basis that the Zimmerly mine no longer had authorization to conduct mining activities under the Act would require consideration of the 1993 director's decision. The director's decision was properly before the Commission for consideration, and it is properly before this court.

24

No. 56417-3-II

The Act required Commission review of many development actions, including existing mining, for the time period between the effective date of the Act and the adoption of each county's scenic area code. 16 U.S.C. § 544h(c). It required Commission review of preexisting uses to ensure consistency with the Act, specifically "that the exploration, development and production of mineral resources, and the reclamation of lands thereafter, take place without adversely affecting the scenic, cultural, recreation and natural resources of the scenic area."16 U.S.C. § 544d(d)(9), 544h(c). In 1993, Clark County had not yet adopted its scenic area code, so the Commission was the only body with authority to approve mining under the Act at the time. *See* 16 U.S.C. § 544h(c).

The Secretary's interim guidelines governed approval of development applications until county scenic area ordinances took effect. 16 U.S.C. § 544h(a)(1). The Commission approved the 1993 application for the continued use and expansion of Zimmerly's mine under the interim guidelines. Consistent with the interim guidelines, the director's decision stated that it "shall become void . . . when the development action is discontinued for any reason for one continuous year or more." 2 AR at 1003. Also pursuant to the guidelines, the director's decision stated that the mine remained "subject to the rules and regulations of other state and local authorities with jurisdiction over the proposed development." *Id.*; *see* INTERIM GUIDELINES ch. III(A)(4).

Because the 1993 director's decision set the terms for continued use of the mine several years before the County implemented its scenic area code, and the 1993 authorization was never updated, the terms of the director's decision apply. Zimmerly and Nutter do not point to any provision in the code making it retroactive to uses that had already been conditionally approved.

Significantly, CCC 40.240.160 expressly creates a mechanism for a landowner to seek an updated approval of their existing use under newer standards in the code. A new authorization can

25

No. 56417-3-II

"remove or revise original conditions" of approval. CCC 40.240.160(F). This shows that the county did not intend the code to automatically apply retroactively. Instead, a landowner has to affirmatively seek out an update in conditions. Zimmerly failed to do so, and she expressly agreed to the ongoing application of the director's decision terms in the 1997 consent decree.[5] Nothing in the permit, scenic area code, or Act prohibits the County and the Commission from enforcing the terms of the 1993 authorization. Thus, we hold that the Commission did not exceed its authority or fail to follow proper procedures by relying on the terms of the director's decision.

B.     Applying the Terms of the Director's Decision

Nutter contends that "the face of the 1993 decision reveals it applies to an application to expand mining operations only." Reply Br. of Nutter at 24. In contrast, Zimmerly acknowledges that the interim guidelines "required existing mining operations (such as Zimmerly's) in the National Scenic Area to apply for a consistency determination with the Commission" and "[f]or expediency, Zimmerly included a mining area expansion for approval[] with its consistency determination application." Reply Br. of Zimmerly at 6-7 (internal footnote omitted).

The application materials in the record from 1993 clearly state that Zimmerly's application was "to resume the mining activity commenced in 1972" and "continu[e] gravel mining, with greater scope of operation than in recent years." 2 AR at 1009-10. Thus, there is substantial evidence in the record to support the conclusion that the Commission's 1993 director's decision evaluated both existing mining on the site as well as the proposed expansion.

---

[5] The Commission argues that the 1997 consent decree prevents Zimmerly from arguing that the county code governs her mining activity to the exclusion of the 1993 director's decision through issue preclusion. In light of our analysis and conclusion that the terms of the 1993 director's decision apply, we decline to reach this issue.

26

No. 56417-3-II

Under the Act, the interim guidelines were the controlling law for finding consistency with the Act at the time of the director's decision. 16 U.S.C. § 544h(a)(1). The interim guidelines applied to certain existing uses such as "the development of sand, gravel, or crushed rock." INTERIM GUIDELINES ch. III(A)(2). "These listed uses [were] subject to a consistency determination." *Id.* A use that failed to be consistent with the Act would not be allowed to continue and was subject to condemnation. INTERIM GUIDELINES ch. II(B). The guidelines did not have any specific standards for reviewing or approving mining except that "[e]xploration, development, or production of minerals shall protect the scenic, cultural, recreation and natural resources of the Scenic Area" and could not be visible from key viewing areas. INTERIM GUIDELINES ch. III(C)(9)(b)(1).

All uses and development that were "discontinued for more than one year" after approval would require a new consistency determination under the interim guidelines. INTERIM GUIDELINES ch. III(A)(6). This was the equivalent of needing to secure a new authorization to continue mining. Similar discontinuance language appeared in the 1993 director's decision approving the Zimmerly mine, which stated that the authorization "shall become void . . . when the development action is discontinued for any reason for one continuous year or more." 2 AR at 1003.

The Commission relied entirely on uncontested findings from the hearing examiner to conclude that mining had discontinued for more than one continuous year. In particular, the hearing examiner found that "[n]o mining or other activities occurred on the Property between 2005 and 2015. Aggregate stockpiles remained on the Property. However, the stockpiles and disturbed areas had revegetated with voluntary trees and grasses." 1 AR at 350. The contrary evidence primarily consists of reclamation permit renewals, which themselves note no activity at

27

No. 56417-3-II

the site for much of that time period. Permits alone do not establish a continued use. *Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 402, 495 P.3d 778 (2021) (stating that building permits "are not determinative of the existence of a nonconforming use.").

Further, the sum of the conflicting evidence Zimmerly and Nutter recite does not cover the entire period where the hearing examiner found no activity at the mine. In the most generous interpretation, there is still a six-year gap between a 2006 Department of Ecology checklist that "identified the site as an 'active site'" and the cement company's bids on "fill jobs using material from the property" in 2012. Opening Br. of Appellants at 44. Zimmerly and Nutter also point to designations on county maps between 2005 and 2015 that the mine was active, but the county itself told the hearing examiner that it had not been conducting monitoring and enforcement inspections at the mine. *See* CCC 40.250.022(F). Even excise tax documents showing that Zimmerly paid business and occupation taxes accounted for less than half of the time period the hearing examiner found the mine to be inactive. And the fact that stockpiles of material remained on the mine property is not by itself dispositive evidence of continued use when those stockpiles were being overgrown due to disuse. The guidelines refer to the "exploration, production, and development of mineral resources," not the long-term storage of stockpiled material.

We hold that the Commission did not act in an arbitrary or capricious manner by determining that the mine was inactive for far longer than the discontinuance period set by the interim guidelines and the 1993 director's decision, and the Commission's findings in this regard are supported by substantial evidence in the record. Because the use of the mine was discontinued for more than one continuous year, the Commission's approval of the mine is void. Zimmerly and

28

No. 56417-3-II

Nutter must seek a new determination that the mine is consistent with the Act, which now requires a permit from the county under its scenic area code, CCC 40.240.010(B) and .050(A)(2).

C.      Remedy

Zimmerly and Nutter contend that the Commission was required to remand the question about the terms of the director's decision to the hearing examiner to allow them an opportunity to fully develop the record. We disagree.

The federal Act grants the Commission authority to "modif[y], terminate[], or set aside" any final county action appealed to it. 16 U.S.C. § 544m(a)(2). As discussed above, the hearing examiner's uncontested findings were sufficient to support the Commission's conclusion that all activity at the mine had been discontinued for more than one continuous year. And the Commission did not act as a fact finder when it relied entirely on uncontested findings from the hearing examiner to conclude that the director's decision was void due to discontinued use. There is sufficient evidence to "persuade a fair-minded person of the truth or correctness of" the Commission's order. *Thurston County*, 164 Wn.2d at 341.

The 1993 director's decision is void, and there is no current scenic area permit authorizing mining at the Zimmerly mine under the federal Act. Zimmerly and Nutter must seek approval from the current permitting entity—Clark County—before they may resume mining. Because we hold that Zimmerly and Nutter do not have authorization to mine under the 1993 director's decision, we need not interpret the county code or address the argument that this appeal is moot based on revisions to the county code.

No. 56417-3-II

### III. APPEARANCE OF FAIRNESS

Zimmerly and Nutter contend that the Commission violated the appearance of fairness by failing to disclose its joint defense agreement with the Friends and Neighbors regarding the jurisdiction portion of the case. They argue the agreement was an ex parte communication that the Commission had a duty to disclose before publishing its decision on the merits. Zimmerly and Nutter also argue that the superior court's finding that they raised this argument late was not supported by substantial evidence. And they insist that even though the agreement was sent to and discussed with Zimmerly's attorneys several times, it was improper for the superior court to impute "Zimmerly's knowledge and actions to Nutter." Opening Br. of Appellants at 56. We disagree.

RCW 42.36.010 provides, "Application of the appearance of fairness doctrine to local land use decisions shall be limited to the quasi-judicial actions of local decision-making bodies" such as "boards which determine the legal rights, duties, or privileges of specific parties in a hearing or other contested case proceeding." RCW 42.36.080 further specifies that "[a]nyone seeking to rely on the appearance of fairness doctrine to disqualify a member of a decision-making body from participating in a decision must raise the challenge as soon as the basis for disqualification is made known to the individual."

"A decisionmaker who engages in prohibited ex parte communications can validly participate in a decision on the proposal only if he or she places on the record 'the substance of any written or oral ex parte communications.'" *Org. to Pres. Agric. Lands v. Adams County*, 128 Wn.2d 869, 887, 913 P.2d 793 (1996) (quoting RCW 42.36.060(1)). "The purpose of the disclosure requirement is to provide opposing parties with an opportunity to rebut the substance of any ex parte communications." *Id*. at 889. The Supreme Court has held that a failure to disclose an ex parte

No. 56417-3-II

communication was harmless when the opposing party later rebutted the substance of the ex parte communications despite the inadequate disclosure. *Id.*

The test for appearance of fairness is whether "'a disinterested person, having been apprised of the totality of a [commissioner's] personal interest in a matter being acted upon,'" would be "'reasonably justified in thinking that partiality may exist.'" *Bunko v. City of Puyallup Civ. Serv. Comm'n*, 95 Wn. App. 495, 503, 975 P.2d 1055 (1999) (alteration in original) (quoting *Swift v. Island County*, 87 Wn.2d 348, 361, 552 P.2d 175 (1976)). "The party asserting a violation of the doctrine must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of commissioner; mere speculation is not enough." *Id.*

In *In re Disciplinary Proceeding Against Scannell*, an attorney subject to disciplinary action also sued disciplinary counsel and the hearing officer, effectively creating a situation where those parties needed to jointly defend against Scannell's action. 169 Wn.2d 723, 742, 239 P.3d 332 (2010). In that case, the Washington Supreme Court held that the appearance of fairness doctrine did not require the hearing officer to recuse from making a decision in the disciplinary action. *Id.* at 743. Here, Zimmerly and Nutter's jurisdictional challenge created a similar alignment between the Friends and Neighbors and the Commission on the jurisdiction issue.

In addition, the resulting joint defense agreement was between the Friends, the Neighbors, and the Commission's *attorneys*, not the Commission members themselves. Nothing in chapter 42.36 RCW indicates that its restrictions apply to a decision-making body's attorneys, and the policy implications of extending the chapter in such a manner are significant. Zimmerly and Nutter also do not offer any evidence of undisclosed communications between Commission members and

31

No. 56417-3-II

the parties. "[M]ere speculation" of undisclosed ex parte communication is insufficient. *Bunko*, 95 Wn. App. at 503.

Further, the agreement was disclosed to Zimmerly's attorneys several times in the weeks before Zimmerly and Nutter filed their joint opening brief with the superior court. Zimmerly and Nutter were filing joint briefs below at the same time that the joint defense agreement was being discussed. A party must raise a basis for disqualification "as soon as the basis for disqualification is made known to the individual." RCW 42.36.080. There is substantial evidence to support the trial court's ruling that the appearance of fairness argument raised for the first time in Zimmerly and Nutter's reply was untimely.

In sum, there is no evidence of ex parte communication between Commission *members* and the parties. And to the extent that Zimmerly and Nutter argue that the agreement itself was an ex parte communication, their attempt to retroactively disqualify the Commission in their reply brief to superior court was untimely.

No. 56417-3-II

CONCLUSION

The 1993 director's decision was the scenic area authorization allowing surface mining on Zimmerly's property. Under the terms of the director's decision, that authorization became void when mining was discontinued for more than one continuous year. Zimmerly and Nutter hold no current scenic area authorization, and they must obtain a valid authorization from the county before resuming mining operations. We affirm.

_____
Glasgow, C.J.

We concur:

_____
Che, J.

_____
Birk, Jᵒ.

---

[6] Sitting in Division II pursuant to RCW 2.06.040 by order of the Associate Chief Justice.